Revised July 16, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 01-20723**
_____

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,**

**Plaintiff-Counter Defendant-Appellee,**

**VERSUS**

**MARK A. WILLIS,**

**Defendant-Counter Claimant-Appellant.**

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

June 25, 2002

Before DUHÉ, DeMOSS, and CLEMENT, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant, Mark A. Willis (Willis), brought this appeal asking this Court to reverse the district court's granting of summary judgment in favor of appellee, National Union Fire Insurance Company of Pittsburgh, PA (National Union). The district court found that Willis was not entitled to coverage under a directors, officers, and corporate liability insurance policy issued by National Union to EqualNet Communications Corporation (EqualNet) of

which Willis was an officer.  We affirm.

## BACKGROUND

National Union brought an action against Willis, who was an officer and director of EqualNet, seeking a declaratory judgment that Willis was not entitled to coverage under any of three directors, officers, and corporate liability insurance policies issued by National Union to EqualNet.  The first policy covered the time period of March 8, 1998, to March 9, 1999 (1998 policy).  The second policy covered the time period of March 8, 1999, to March 8, 2000 (1999 policy).  The third policy covered the time period of March 8, 2000, to March 8, 2001 (2000 policy).  EqualNet intervened.

A United States magistrate judge granted summary judgment in favor of National Union.  Furthermore, the district court granted National Union's motion to dismiss Willis' counterclaims for extra-contractual liability.  Thereafter, EqualNet dismissed its intervention and is not a party to the present appeal.

This appeal stems from a cause of action brought by CyberServe, Inc., WSHS Enterprises, Inc., and William Stuart (collectively "CyberServe") on September 21, 1998, against EqualNet, Netco Acquisition L.L.C., Willis, and Willis Group L.L.C. in the 215th District Court of Harris County, Texas.  The action

2

asserted claims against Willis for fraud, fraud in the inducement, statutory fraud in a stock transaction, tortious interference with a contract, and conspiracy. In addition, claims for breach of contract and quantum meruit were alleged against EqualNet and the Willis Group. The plaintiffs filed their fourth amended petition in March 2000, adding a claim for negligent misrepresentation against Willis, the Willis Group, and EqualNet. The added negligent misrepresentation claim was based on the same alleged misrepresentations underlying the fraud, fraudulent inducement, and statutory fraud claims. Furthermore, the factual basis of the fourth amended petition was the same as that used in the original petition.

Notably, National Union was first notified of the lawsuit by EqualNet on February 29, 2000. The first time Willis notified National Union of the lawsuit was by letter dated May 11, 2000. National Union denied coverage and declined to advance defense costs to Willis because, in accordance with paragraph 7 of the policies, the claims were not timely reported. Willis and EqualNet did not dispute that they failed to notify National Union of the CyberServe lawsuit during the 1998 policy period. Willis, however, argued that he was not required to give notice of a lawsuit unless a claim asserted against him was covered by the terms of the policy.

Therefore, Willis asserted that he was not required to notify National Union until after the fourth amended petition was filed in

3

March 2000.  The three previously amended petitions, according to Willis, asserted intentional torts that fell within the policy exclusion for claims "arising out of, based upon, or attributable to the committing in fact of any criminal or deliberate fraudulent act."  As a result, Willis claimed that his May 11, 2000, notification to National Union was timely to provide coverage under the 2000 policy.

The district court determined that Willis was not entitled to coverage under any of the three policies and granted summary judgment in favor of National Union.  The court concluded that Willis should have given notice to National Union in 1998 when he was first made aware of circumstances that could reasonably be expected to give rise to a claim against him.  *National Fire Ins. Co. v. Willis*, 139 F. Supp. 2d 827, 835 (S.D. Tex. 2001).  In addition, the court concluded that the claims made in the fourth amended petition were "expressly excluded from the coverage of the policy because they allege, arise out of, are based upon, or are attributable to a pending or prior litigation or allege or derive from the same or essentially the same facts as alleged in such pending litigation."  *Id.*  Willis now appeals the district court's decision.


## STANDARD OF REVIEW

Review of the district court's granting of summary judgment is

4

*de novo*. **Harris v. Rhodes**, 94 F.3d 196, 197 (5th Cir. 1996). Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All disputed facts and reasonable inferences are viewed "in the light most favorable to the nonmoving party." **Duffy v. Leading Edge Prods.**, 44 F.3d 308, 312 (5th Cir. 1995).

## DISCUSSION

The issue before this Court is whether the district court erred in granting summary judgment in favor of National Union having found that Willis failed to provide timely notice of the claims or potential claims asserted against him as required by his insurance policy. This Court has clearly identified that Texas law requires an insurance policy to be construed against the insurer and in favor of the insured. *See* **Lubbock County Hosp. Dist. v. National Union Fire Ins. Co**, 143 F.3d 239, 242 (5th Cir. 1998); **National Union Fire Ins. Co**. **v. Hudson Energy Co.**, 811 S.W.2d 552, 555 (Tex. 1991); **Blaylock v. American Guarantee Bank Liab. Ins. Co.**, 632 S.W.2d 719, 721 (Tex. 1982). As a result, an insurance policy's exceptions and limitations are construed in favor of the insured in order to avoid exclusion of coverage. **Puckett v. U.S.**

5

*Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). Furthermore, when interpreting an insurance policy, courts must consider that the primary goal is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). In so doing, courts are to ensure the policy is interpreted in such a way as to give effect to each term in the contract so that none will be rendered meaningless. *Lynch Props. Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 626 (5th Cir. 1998); *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). In addition, all provisions of the policy should be considered with reference to the whole contract so that no provision is controlling. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).

The insurance policies at issue here are "claims-made" policies. To invoke coverage under a claims-made policy, a claim must be made against the insured during the coverage period of the policy and the insured must notify the insurer of the claim during the same period. *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 658-59 & n.2 (5th Cir. 1999). The insured's giving notice to the insurer triggers coverage. *Id.* at 659. Further, under a claims-made policy, insurers may deny coverage if notice is not given timely. *Id.*

## A. Willis' Contentions

Willis argues that he is entitled to coverage under the 2000

6

policy for the negligent misrepresentation claim made against him in April 2000 when CyberServe and the other plaintiffs in the underlying lawsuit filed their fourth amended petition. Willis first complains that the district court's ruling was erroneous because it misconstrued the applicable notice provisions under section 7(c) of the policy. *See **Willis***, 139 F. Supp. 2d at 832. Section 7(c) provides:

> (c) If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons, and entities invoked, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

According to Willis, requiring the insured to give notice of circumstances likely to give rise to a claim ignores the plain language of the insurance policy's notice requirement. Willis contends that the applicable provision "*permitted* but did not *require* Mr. Willis to give notice of any circumstances which might reasonably be expected to give rise to a claim being made against him that had not yet resulted in a claim that is covered by the policies."

Second, Willis argues that the district court misconstrued the scope of the policy's exclusions concerning pending litigation.

7

The district court held that the negligent misrepresentation claims asserted in the fourth amended petition were excluded from coverage under exclusion clause 4(e) because "they allege, arise out of, are based upon, or are attributable to a pending or prior litigation or allege or derive from the same or essentially the same facts as alleged in such pending or prior litigation." *Id.* at 835. Exclusion clause 4(e) provides the insurer does not have to make a payment in connection with a claim against an insured:

> (e) alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation.

According to Willis, the court's interpretation of exclusion clause 4(e) ignores the controlling language "as of the Continuity Date." Under the policy, the Continuity Dates were in 1995 and 1996, which were well before the institution of the underlying CyberServe litigation initiated in 1998. Similarly, Willis notes that the court erred in concluding that exclusion 4(d) deprived him of coverage. Exclusion clause 4(d) provides the insurer need not make a payment for a claim:

> (d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

According to Willis, because his claim was made under the 2000 policy, which was a renewal or replacement policy, exclusion 4(d)

8

does not apply.

Third, Willis contends that the district court failed to appropriately distinguish between intentional claims and negligent misrepresentation claims. Specifically, Willis argues that the court concluded that the deliberate fraud exclusion did not reach the claims asserted in the original petition. Therefore, according to Willis, National Union did not have be contacted until after the petition was amended for the fourth time.

Fourth, Willis argues that the court erroneously applied contractual interpretation principles to the insurance policies. According to Willis, the district court's decision was based on legal doctrines that were designed to protect insureds but were misapplied to deprive him of his insurance.

## B. *National Union's Contentions*

National Union contends that the addition of the negligent misrepresentation claim in the fourth amended petition did not constitute a new claim, as Willis argues. Rather, National Union argues that holding otherwise would require courts "to consider each area of recovery as a separate claim." Therefore, according to National Union, the "claim" is the demand for damages initially made in the first petition filed by the plaintiffs in the underlying lawsuit. As a result, National Union argues that the 1998 policy applies to this case.

Further, National Union contends that the policies in question

9

do not limit the notice provisions to only covered claims. According to National Union, "if an insured is free to make its own coverage determination and decided to notify its insurer of a claim only when the insured wishes to do so, then the notice provisions in claim-made policies become meaningless." In addition, National Union disputes Willis' contention that coverage was never triggered in the original petition because only acts of intentional, deliberate conduct were alleged. Rather, National Union argues that under the express language of the policy, only a finding that the insured actually committed the alleged criminal or deliberate fraudulent act will make the exclusion applicable. Moreover, National Union argues that statutory fraud, which was alleged in the original petition, does not require proof of scienter to recover actual damages. Therefore, National Union contends that actual damages could be awarded "without ever having to find that Willis had committed in fact any deliberate fraudulent act."

Lastly, National Union argues that Willis' contention that exclusion 4(d) does not apply to the present case because he never reported the claim until the 2000 policy period is erroneous. National Union notes that "EqualNet, of which Willis was an officer, reported the claim to National Union during the 1999 policy period." Thus, according to National Union, the initial claim had been reported under a prior policy period, which triggered exclusion 4(d).

10

## C. Analysis

The original petition in the underlying CyberSpace lawsuit was filed on September 21, 1998. The fourth amended petition, which included the negligent misrepresentation claim, was filed on April 11, 2000. As noted above, Willis argues that the negligent misrepresentation falls under the 2000 policy that covers the time period of March 8, 2000, to March 8, 2001. National Union, however, contends that the negligent misrepresentation claim is part of the initial lawsuit and, therefore, falls under the 1998 policy that covers the time period of March 8, 1998, to March 9, 1999. The district court concluded that Willis was foreclosed from relying on the 2000 policy for coverage arising from the negligent misrepresentation claim. The district court reached this conclusion because the claims made in the fourth amended petition "arise out of, are based upon, or are attributable to a pending or prior litigation, or allege or derive from the same or essentially the same facts as alleged in such pending or prior litigation, and thus are expressly excluded from the coverage of the [2000] policy." *Willis*, 139 F. Supp. 2d at 835.

We agree with the district court. All three policies define "Claim" as "a civil . . . proceeding . . . which is commenced by service of a complaint or similar pleading." Under this definition, the initial complaint brought by CyberServe "commenced" this civil proceeding as a whole. Under this plain reading of the

11

contract's language, amended complaints cannot commence a civil proceeding that has already been commenced by the filing and service of the initial complaint. Any other reading would result in one lawsuit qualifying as two different civil proceedings. *See, e.g.,* FED. R. CIV. PRO. 3 ("A civil action is commenced by filing a complaint with the court."); TEX. R. CIV. P. 22 ("A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk."); ***Ameriwood Indus. Int'l Co. v. American Cas. Co.***, 840 F. Supp. 1143, 1152 (W.D. Mich. 1993) ("A suit begins in federal court with the filing of a complaint. After the original filing, the suit is considered to be pending. Thus the amendment of the . . . complaint . . . does not constitute a new filing of the case.") (citations omitted); *see also* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1052 (3d ed. 2002) (describing the commencement of a civil action with the filing of a complaint). This is particularly true when, as in this case, the amended complaint is based on identical facts as those used in the original petition. We conclude, therefore, nothing in the record supports Willis' contention that the negligent misrepresentation claim set forth in the fourth amended complaint gives rise to a new theory of recovery that is a separate claim governed by the 2000 policy. As a result, Willis was required to notify National Union during the 1998 policy period.

As already noted, however, Willis argues that he was not obligated to notify National Union of claims made against him unless they were actually covered by the policy. Specifically, Willis contends that the "deliberate fraudulent act" exclusion under section 4(c) removes the claims made against him from the scope of the 1998 policy. Under Texas law, an insurer's duty to defend arises when the pleadings allege a claim that is "potentially" covered by the applicable policy. *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). To determine whether the pleadings contain a "potentially" covered claim, this Court "'must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.'" *American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998) (quoting *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). Furthermore, this Court should not consider the truth or falsity of the allegations in the pleadings. *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). Rather, all of the facts alleged in the complaint are assumed to be true. *See Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex. App.–Houston [1st Dist.] 1990, writ denied).

The original petition alleges, *inter alia*, that Willis made misrepresentations and omissions that induced BlueGate and Stuart

13

to perform thereunder. In addition, the petition alleges that Willis' "representations and promises were false and were made either intentionally or recklessly without regard to their truth or falsity." Furthermore, the petition asserts that Willis "agreed to participate in unlawful acts for the purposes of defrauding BlueGate and Stuart and tortiously interfering with BlueGate's right to exercise the Lien pursuant to the terms of the Web Page Agreement." In determining whether the original petition in the CyberServe lawsuit was "potentially" covered, the district court undertook an analysis of whether a "reckless" act is equivalent to a "deliberate" act and, therefore, excluded under section 4(c) of the 1998 policy. *See* **Willis**, 139 F. Supp. 2d at 834-35.

We do not believe that such an analysis is warranted in this case. The gist of the original petition's factual allegations are that Willis made misrepresentations, omissions, and false promises that induced BlueGate and Stuart to perform thereunder. These factual allegations are enough to implicate the 1998 policy under which National Union is obligated to "pay the Loss of each and every Director or Officer of the Company arising from a Claim . . . for any actual or alleged Wrongful Act." Whether a director or officer ultimately is found to have committed a wrongful act based on the legal theory of tortious conduct, be it intentional or negligent, is irrelevant for requiring notification under the claims-made policy in this case.

14

The purpose of claims-made policies, unlike occurrence policies, is to provide exact notice periods that limit liability to a fixed period of time "after which an insurer knows it is no longer liable under the policy, and for this reason such reporting requirements are strictly construed." *Resolution Trust Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir. 1994). Allowing coverage beyond that period would be to grant the insured more coverage than that which was bargained for, and to require insurers to provide coverage for risks not assumed. *See United States v. A.C. Strip*, 868 F.2d 181, 187 (6th Cir. 1989). Ultimately, a claims-made policy's notice requirement "actually serves to aid *the insured* by extending claims-made coverage beyond the policy period." *FDIC v. Booth*, 82 F.3d 670, 678 (5th Cir. 1996) (citing *FDIC v. Barham*, 995 F.2d 600, 604 & n.9 (5th Cir. 1993)). Furthermore, as correctly noted by the Eighth Circuit:

> "[C]laims-made" policies permit the reporting of acts not yet in litigation. This provides additional protection for the insured, because coverage could extend to a suit not brought until long after the policy has expired, as long as the insured provides notice to the insured [sic] of potential claims. Yet this highlights the reciprocal responsibility of the insured to report all acts and occurrences that could become future clams. Thus, the notice provision requirement sets the parameters of the coverage under the policy.

*FDIC v. St. Paul Fire & Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir. 1993). Clearly, the "as soon as practical" language in section 7(a) of the 1998 policy was intended to prevent an insured

15

from waiting to notify the insurer of the existence of a claim. Had Willis reported the claim to National Union "as soon as practicable" during the 1998 policy period in which the claim was first made, he would have preserved his rights to coverage. Because Willis did not properly report the claim, he violated the timely notice provision and, therefore, his claim was not within the 1998 policy's coverage.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

16