**LODGENET ENTERTAINMENT CORPORATION, a Delaware Corporation, Plaintiff,**

v.

**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, an Alaska Corporation, Defendant.**

**No. CIV 02–4051.**

United States District Court,
D. South Dakota,
Southern Division.

Sept. 29, 2003.

Jeremiah D. Murphy, Murphy, Goldammer & Prendergast, Sioux Falls, SD, Lisa Hansen Marso, Boyce, Greenfield, Pashby & Welk, Sioux Falls, SD, Michael G. Taylor, Steven P. Zabel, Leonard, Street & Deinard, Minneapolis, MN, for Plaintiff.

Patricia A. Meyers, Donald A. Porter, Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Plaintiff, LodgeNet Entertainment Corporation ("LodgeNet"), filed a Motion for Partial Summary Judgment (Doc. 12) (asserting a claim of breach of insurance contract), and a Motion for Partial Summary Judgment on Damage Issues. (Doc. 28.) Defendant American International Specialty Lines Insurance Company ("American"), filed a Motion for Summary Judgment. (Doc. 32.) The motions have been fully briefed by the parties and oral argument was heard on the motions during the pretrial conference held on March 10, 2003.

During the pretrial conference, the Court informed the parties that summary judgment would be entered in favor of the Defendant on Plaintiff's bad faith claim. The Court determined there was no genuine issue of material fact that there was an absence of a reasonable basis for Defendant's denial of coverage and knowledge or reckless disregard of a reasonable basis for denying coverage. *See Champion v. United States Fidelity and Guar. Co.*, 399

N.W.2d 320 (S.D.1987) (adopting the two-pronged test for bad faith requiring a plaintiff to demonstrate an absence of a reasonable basis for denying policy benefits and knowledge or reckless disregard of a reasonable basis for denying coverage). After announcing the Court's ruling on the bad faith claim during the pretrial conference, the parties concurred with the Court's conclusion that the issues remaining in this action are questions of law that may be resolved on the basis of the written record without a court or jury trial.

## BACKGROUND

LodgeNet purchased a series of consecutive Employment Practices Liability ("EPL") insurance policies from American beginning April 10, 1995 through April 10, 2002. LodgeNet seeks coverage under the EPL policy issued by American for the period April 10, 1999 to April 10, 2000 ("Policy"), for a nearly $400,000 Judgment against LodgeNet in a sexual harassment action.[1] The Policy provides coverage for sexual harassment claims, with a policy limit of $1,000,000.

On March 18, 1999, Brenda Jaros, a former LodgeNet employee, filed with the Equal Employment Opportunity Commission ("EEOC") and the South Dakota Division of Human Rights a sexual harassment charge against LodgeNet. LodgeNet was served with this administrative charge on March 25, 1999, but it did not notify American of the charge. On the same day it received notice of Jaros' administrative charge, LodgeNet received a revised price quotation for the renewal of its EPL policy with an inception date of April 10, 1999 through April 10, 2000. The written revised price quotation included a statement that if there was a material change in the risk between the date of the quotation and the inception date of the Policy that American could modify or withdraw the quote.

On August 27, 1999 the South Dakota Division of Human Rights issued a determination of no probable cause. The EEOC issued a Dismissal and Notice of Rights on October 20, 1999. Jaros filed a civil lawsuit in this Court on January 24, 2000, alleging sexual harassment based upon the same conduct at issue in the administrative proceedings. LodgeNet, through its attorney Steven Zabel, notified American of the filing of the lawsuit by letter dated March 14, 2000. American responded six months later with an initial coverage evaluation dated September 14, 2000. The September 14, 2000 letter requested copies of the administrative charges and determinations and included the following coverage opinion:

> Kindly note that, pursuant to clause 2(b), the definition of a Claim includes the filing of an administrative charge or similar document of which notice has been given to an Insured. As the charges were filed prior to the effective date of the policy, we must advise that if the Insured also received notice of the filings prior to the policy's inception date, coverage would be precluded for this matter.

(Zabel Aff., Doc. 15, Ex. C.) LodgeNet, knowing that it had received notice of the administrative charge prior to the 1999–2000 Policy's inception date, interpreted this letter to deny coverage. Nevertheless, LodgeNet responded by sending a letter dated September 25, 2000 purporting to enclose the requested documents

---

1. Brenda Jaros, a former LodgeNet employee, obtained a Judgment against LodgeNet in the case of *Jaros v. LodgeNet Entertainment Corp.,* CIV 00–4007 (D.S.D.) in 2001. After a jury verdict in favor of Jaros, a Judgment was entered in her favor for $300,000 in compensatory damages, back pay in the amount of $24,907.44 and attorney fees and paralegal charges in the amount of $74,592.20. The Eighth Circuit affirmed. *See Jaros v. LodgeNet Entertainment, Corp.,* 294 F.3d 960 (8th Cir.2002).

from the administrative proceedings. American asserts, and LodgeNet is willing to assume for purposes of the present motions, that the documents were not enclosed and American did not receive them in September 2000. American, however, did not immediately notify LodgeNet that it did not receive the documents and waited another six months to contact LodgeNet. On April 9, 2001, American again contacted LodgeNet to request the information it had first requested in September 2000. American contends that again it did not receive the requested information. LodgeNet, however, asserts that the documents were provided to American following the April 9, 2001 contact.

The jury returned a verdict of $500,000 in compensatory damages against LodgeNet in the Jaros action. The damages award was subsequently reduced to $300,000 because of a statutory cap on damages. LodgeNet notified American of the verdict and continued to seek coverage under the 1999–2000 Policy.

Several provisions in the 1999–2000 Policy are relevant in this action. Part 1, entitled "INSURING AGREEMENTS," provides that the Policy is a "claims-made" policy and establishes the types of claims for which coverage is provided. This provision states, in relevant part: "[t]his policy shall pay the Loss of each and every Insured arising from a Claim first made against such Insured during the Policy Period ... and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Employment Practices Violation." (Johnson Affidavit, Doc. 16, Ex. E). All of the capitalized words in Part 1 are defined in Part 2 of the Policy.

The Policy further provides in Part 7, entitled "NOTICE/CLAIM REPORTING PROVISIONS," that "[a] Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the

Company on the behalf of any Insured or by the Insurer, whichever comes first." (*Id.*) The notice provisions in the Policy further provide in Part 7(a) that written notice of a "Claim" shall be given "as soon as practicable and either: (1) anytime during the Policy Period ...; or (2) within 30 days after the end of the Policy Period ...." (*Id.*)

In addition to the affirmative grant of insurance provision and the notice provisions, the definition of "Claim" is discussed in detail below. Furthermore, several other provisions are reviewed below in order to interpret the language of the Policy.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995) (citations omitted). Because the parties have agreed that there are no material factual questions remaining in this case, summary judgment is appropriate.

## I. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

### A. Definition of "Claim"

The Policy at issue is a "claims-made" policy, as distinguished from an "occur-

rences" policy. Under an occurrences policy, the *facts giving rise to the claim* must occur during the term of the policy. To obtain coverage under a claims-made policy, however, "a *claim must be made* against the insured during the coverage period of the policy and the *insured must notify* the insurer of the claim during the same period." *National Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 339 (5th Cir.2002) (citations omitted) (emphasis supplied). "With a claims-made insurance policy, the insurer undertakes a more limited risk than an insurer who issues an occurrences policy; insurers typically charge higher premiums for occurrence policies to compensate for their exposure to indefinite future liability." *Pantropic Power Prod., Inc. v. Fireman's Fund Ins. Co.*, 141 F.Supp.2d 1366, 1369 (S.D.Fla.2001) (aff'd by 34 Fed. Appx. 968 (11th Cir.2002)) (citing *National Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir.1993)). "Notice in a 'claims made' policy provides the insurer with the knowledge that after a certain date the insurer is no longer liable under the policy, and accordingly allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty." *FDIC v. St. Paul Fire and Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir.1993) (citations omitted). Therefore, "[i]t is clear that 'claims made' policies place special reliance on notice." *Id.* "If the insured does not give notice within the contractually required time period, there is simply no coverage under the policy." *Id.* (citations omitted). The parties in this case disagree as to whether LodgeNet provided American notice of the claim in accordance with the provisions of the Policy in order to afford LodgeNet coverage under the Policy.

The core of LodgeNet's argument is that a civil lawsuit, as distinguished from an administrative charge, can be a separate "Claim" under the terms of the Policy even though it arises out of the same facts. If the administrative claim and the subsequently filed civil lawsuit arising out of the same facts can be considered separate "Claims" under the Policy, then LodgeNet will prevail because LodgeNet did provide timely notice of the civil lawsuit within the policy period under the 1999–2000 Policy at issue.

■ American's argument centers on its interpretation that an administrative charge and a subsequently filed civil lawsuit arising out of the same facts are considered a single "Claim" under the Policy. Because LodgeNet did not provide notice of the "Claim" when the administrative charge was first filed, American argues that there is no coverage under the Policy.

The Policy defines "Claim", in relevant part, as:

(1) a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or

(2) a civil, criminal, administrative *or* arbitration proceeding for monetary or non-monetary relief which is commenced by:

(i) service of a complaint or similar pleading; or

(ii) return of an indictment (in the case of a criminal proceeding); or

(iii) receipt or filing of a notice of charges.

The term "Claim" shall include an Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to an Insured.

(Johnson Affidavit, Doc. 16, Ex. E, Part 2(b) (emphasis added).) While other provisions in the Policy refer to various proceedings "arising out of the same facts," the definition of Claim does not state that all suits or proceedings arising out of the same facts are a single "Claim" under the Policy. Because the definition of Claim does not clarify whether one set of facts can give rise to multiple "Claims" under the Policy, it is helpful to look to the other provisions of the Policy to resolve this issue.

The first section of the Policy to consider is Part 7 "Notice/Claim Reporting Provisions", subsection (b):

> If written notice of *a Claim* has been given to the Insurer pursuant to Clause 7(a) above, then *any Claim which is subsequently made* against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Employment Practices Violation which is the same as or related to any Employment Practices Violation alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(Johnson Aff., Doc. 16, Ex. E, Part 7(b) (emphasis added).) The language in 7(b) weighs against American's asserted interpretation that the Policy treats all administrative charges and civil lawsuits arising out of the same facts as a single "Claim." The language "a Claim" and "any Claim which is subsequently made" supports LodgeNet's interpretation that an administrative charge can be a separate "Claim" from a civil lawsuit under the terms of the Policy. In the context of a sexual harass-

ment case, Part 7(b) explains that if an insured gives notice of an administrative charge and later gives notice of a subsequently filed civil lawsuit, the insurer will consider that notice of the civil lawsuit was made at the time the notice of the administrative charge was given. Based on the definition of "Claim" in the Policy, "a Claim" can include *either* an administrative charge or a civil lawsuit. Consequently, there would be no need for Part 7(b) if the phrase "a Claim" was intended to encompass all types of proceedings arising out of the same facts.[2] When interpreting insurance contracts, "[i]t is elementary that all conditions and provisions of [the] policy are to be construed together for the purpose of *giving effect to each clause ....*" *Sunshine Mut. Ins. Co. v. Addy,* 74 S.D. 387, 53 N.W.2d 539, 540 (1952) (emphasis in original). Therefore, in order to give effect to Part 7(b), the Policy must be interpreted so that multiple "Claims" can arise out of one set of facts.

It is also helpful to examine Part 4(c) of the Policy to interpret whether multiple "Claims" can arise out of the same facts. Part 4 lists the exclusions to coverage under the Policy and Part 4(c) provides, in relevant part:

> The Insurer shall not be liable to make any payment for Loss in connection with *a Claim* made against an Insured: alleging, arising out of, based upon or attributable to the facts alleged, *or to the same or related Employment Practices Violations alleged or contained in any claim* which has been reported, ...under any policy of which this policy is a renewal ....

---

2. Part 7(b) does not explicitly address the situation in this case where the insured did not give notice of the administrative charge (and does not seek coverage for expenses in-

curred in the administrative proceedings) but it did give notice of the civil lawsuit and seeks coverage for expenses incurred and damages awarded in the civil lawsuit.

(Johnson Aff., Doc. 16, Ex. E, Part 4(c) (emphasis added).)[3] Again, the construction of this exclusion indicates that American contemplated that there would be multiple "Claims" which could arise from the same set of facts.

When considering the general purpose of a claims-made insurance policy against the language of the Policy at issue in this case, an ambiguity is revealed. Because of the underlying purpose of a claims-made policy, immediate notice of the *possibility* of a claim is generally required. The language of the Policy, as interpreted above, does not require notice of the *possibility* of a claim however. Therefore, the Policy is "susceptible to two constructions" and is ambiguous. *See National Sun Indust., Inc. v. South Dakota Farm Bureau Ins. Co.*, 1999 SD 63, 596 N.W.2d 45, 48 (1999).

■ "[A]n insurance policy is ambiguous when it 'is fairly susceptible to two constructions.'" *National Sun Indust., Inc.*, 596 N.W.2d at 48 (quoting *Economic Aero Club v. Avemco Ins. Co.*, 540 N.W.2d 644, 645 (S.D.1995) (internal quotations omitted)). "An ambiguous interpretation will be construed against the drafter of the contract." *Zochert v. National Farmers Union Prop. & Cas. Co.*, 1998 SD 34, 576 N.W.2d 531, 532 (1998) (citations omitted). "This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured." *Rumpza v. Donalar Enterprises, Inc.*, 581 N.W.2d 517, 521 (S.D.1998) (internal quotations and citations omitted). " '[A]ll the provisions of the policy must be considered and construed together, and the intention ascertained from the language of the policy alone, if possible.'"

*Zochert,* 576 N.W.2d at 532 (quoting *Hemmer–Miller Dev. Co. v. Hudson Ins. Co.,* 59 S.D. 129, 238 N.W. 342, 343 (1931)).

Because the language of the Policy is ambiguous, it must be construed for the benefit of the insured, LodgeNet. In addition, the Court considered that the intention of the Policy should be "ascertained from the language of the policy alone." *Zochert,* 576 N.W.2d at 532. Therefore, the Court will rely on its interpretation of the language of the Policy, rather than underlying purposes of a claims-made policy which generally require notice of facts that could give rise to a claim. After carefully considering the South Dakota law concerning interpretation of ambiguous insurance contracts and the language of the Policy, the Court has determined that, multiple "Claims" affording coverage under the Policy may arise from one set of facts.

### B. Whether LodgeNet's Claim is Covered by the Policy

American makes several arguments concerning why LodgeNet's claim for coverage should be denied and summary judgment should be granted in American's favor. First, American argues that, under a claims-made policy, the insured must provide to the insurer timely notice of facts that potentially could give rise to a claim. American cites several cases for this proposition which argue against the interpretation of "Claim" as adopted by this Court. After thoroughly reviewing these cases, however, the Court finds that the language of the policies and the situations in these cited cases are different than the language of the Policy and situa-

---

3. The exclusion listed in Part 4(c) is not applicable in determining whether coverage is excluded in this case. Because the set of facts at issue was not previously reported and no notice was given to American prior to Lod- geNet giving notice of a claim when the civil lawsuit was instituted, the exclusion in Part 4(c) is not relevant, other than as a guide for interpretation of the language in other provisions of the Policy.

tion at issue in this case. *See e.g., FDIC v. St. Paul Fire and Marine Ins. Co.,* 993 F.2d at 159 (where EPL policy was not renewed, the court held that information provided on an application for policy renewal does not constitute effective notice of a claim under a prior policy); *Specialty Food Sys., Inc. v. Reliance Ins. Co. of Ill.,* 45 F.Supp.2d 541 (E.D.La.1999), aff'd 200 F.3d 816 (5th Cir.1999) (in situation very similar to the instant case, the court held that effective notice was not provided and coverage was precluded based on the definition of claim: "Claim means any written demand or notice received by an Insured ... advising that it is the intention of a person to hold the Insured responsible ..."); *Pantropic Power Prod., Inc.,* 141 F.Supp.2d at 1368 (court held that notice was not timely provided where policy language provided that multiple claims cannot arise out of one set of facts). The cases cited by American either are not relevant to interpreting the language of this Policy or do not support American's interpretation because the language of the policies in the cited cases is materially different than the language of the Policy. The policy at issue in *Pantropic Power,* for example, included language that clearly stated "claims arising from 'the same wrongful employment practice or series of similar or related wrongful employment practices' are deemed to be a single claim for the purpose of notice provision." 141 F.Supp.2d at 1368. This is the type of language that would have supported American's interpretation of its Policy.

■ Second, American argues that it is inappropriate to rely on the exclusions language contained in Parts 4(c) and 4(d) of the Policy in order to interpret the contract. The general rule is that if coverage cannot be found in the insuring provisions, the exclusions cannot broaden coverage. *See Standard Fire Ins. Co. v. Chester*

*O'Donley,* 972 S.W.2d 1, 7–8 (Tenn.App. 1998); *see also Haugan v. Home Indem. Co.,* 86 S.D. 406, 197 N.W.2d 18, 22 (1972). This argument is unconvincing. As explained above, the Court finds there is coverage in the insuring clause, based upon the definition of "Claim", as interpreted, in the Policy. The reading of the Policy to allow coverage in this case may not have been American's intent, but insuring agreements must be interpreted based upon the language used and not the insurer's intent. The exclusion provisions are not relied upon to increase coverage. Rather, the exclusions language helps to define and shape the scope of coverage.

Third, American asserts that LodgeNet construes Part 4(d) to mean that there is no notice requirement for any claims for which LodgeNet received notice after the Continuity Date of April 10, 1995. (*See* Johnson Aff., Doc. 16, Ex. L.) American cites *National Union Fire Ins. Co. v. Willis,* 296 F.3d at 340 for the proposition that the Court cannot rely on the Continuity Dates for determining whether notice was timely provided. American misstates LodgeNet's argument. The Court finds that the Policy does have notice requirements for "Claims" made after the Continuity Date. These notice requirements, however, apply to each "Claim", as the definition of "Claim" is interpreted. The notice requirements do not require notice of a set of facts that could give rise to a "Claim." The Court finds American's reliance on *Willis* is misplaced. In *Willis,* the plaintiff argued that an amended complaint was a separate "Claim" from the original complaint. 296 F.3d at 338. In the instant case, LodgeNet does not argue that an amended complaint is a different "Claim". Here, the "Claims" are, first, an EEOC administrative action, and second, a civil lawsuit.

Fourth, the parties both discuss whether American was prejudiced by LodgeNet's purported untimely notice. LodgeNet argues that American was not prejudiced. American argues that prejudice is not relevant in determining coverage under a claims-made policy. As neither party asserts that coverage should be denied due to prejudice to American, the Court will not address this issue.

■ Fifth, American argues that LodgeNet has been uncooperative with American during its investigation of the situation. American contends that LodgeNet's failure to immediately provide the documents requested by American's September 14, 2000 letter constitutes a breach of the Policy's cooperation clause. Part 8 of the Policy provides "The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require." (Johnson Aff., Ex. E, Part 8.) American contends that LodgeNet's breach of the duty of cooperation consequently voids any recovery under the Policy for this claim.

■ Insureds have a duty to cooperate with an insurer's requests allowing a reasonable investigation of a claim. *See Murphy v. Hopkins, et al.,* 68 S.D. 494, 4 N.W.2d 801, 803 (1942). Prior to invoking the defense of breach of the cooperation clause in the policy, however, an insurer "must use reasonable diligence in obtaining cooperation from the insured." *Carter v. Aetna Cas. and Sur. Co.,* 473 F.2d 1071, 1077 (8th Cir.1973). American waited six months after receiving LodgeNet's letter, which purported to enclose the requested documents, to again request the information. In this case, American's efforts to secure cooperation from LodgeNet were not diligent. Therefore, coverage under the Policy cannot be avoided based on failure to cooperate.

■ Sixth, LodgeNet failed to disclose the EEOC administrative claim to American in its application for renewal of the Policy for the 1999–2000 year. The renewal application form did not ask any questions regarding whether there was a change in the risk insured, or whether LodgeNet was aware of any facts which may lead to administrative or civil proceedings. The letters dated March 22, 1999 and March 25, 1999 from American, which quoted the premium for renewal of the Policy, indicated that the premium quoted was subject to change if a change in the risk insured was discovered prior to issuance of the Policy. American argues that LodgeNet's failure to disclose a known material change in the risk precludes coverage under the Policy pursuant to SDCL § 58–11–44. The Court finds that LodgeNet made no misrepresentation or omission in its application for renewal of the Policy. Neither the renewal application nor the letters containing the premium quotations asked any questions regarding whether LodgeNet had been notified of administrative proceedings, civil proceedings, or was aware of facts which could possibly lead to filing of administrative or civil charges.

Despite the above arguments made by American, when the Court's interpretation of "Claim" is applied to the claim made by LodgeNet, coverage under the Policy exists for the Jaros lawsuit. The insuring clause provides coverage for claims made against the insured during the policy period and reported in writing to the insurer according to the terms of the Policy. Here, the civil lawsuit was filed against LodgeNet on January 24, 2000, which occurred during the policy period of April 10, 1999 through April 10, 2000. LodgeNet provided notice of the civil lawsuit to American on March 14, 2000, which complied with the notice provisions of the Policy. Furthermore, the claim is not exclud-

ed by any exclusions clause in Part 4 of the Policy. Consequently, coverage exists for LodgeNet's claim under its 1999—2000 EPL Policy with American.

## II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGE ISSUES

The Policy has a $1,000,000 coverage limit, and the insuring provision promises to make payments for covered claims, including judgments and defense costs. LodgeNet incurred legal expenses of $159,322.77 [4] in defending the Jaros lawsuit. (Brunick Aff. at Ex. A.) LodgeNet also paid $444,846.24 in judgment in the Jaros lawsuit (Brunick Aff. at Ex. B.) The Policy provides that American shall indemnify LodgeNet for covered claims and defense costs, see Johnson Aff. at Ex. E, Part 1, and American conceded that if the Court found coverage under the Policy, LodgeNet is entitled to both its defense costs and the cost of satisfying the judgment in the Jaros lawsuit. (Defendant's Response, Doc. 37 at page 2.) Therefore, American shall reimburse LodgeNet in the amount of $604,169.01, plus prejudgment interest.

LodgeNet also argues that it is entitled to reimbursement of its legal fees and expenses related to this lawsuit against American. American refused to pay the claim related to the Jaros lawsuit, and LodgeNet contends that this refusal was vexatious and unwarranted. Therefore, LodgeNet asserts that, pursuant to SDCL § 58–12–3, it is entitled to reimbursement of its costs, fees and expenses related to this lawsuit.

SDCL § 58–12–3.1 provides, in relevant part: "The determination of entitlement to an allowance of attorney fees as costs and the amount thereof under § 58–12–3 shall be made by the court or the Department of Labor at a separate hearing of record subsequent to the entry of a judgment or award in favor of the person making claim against the insurance company . . . ." A judgment must be rendered on the underlying claim in order for a plaintiff to bring a "vexatious refusal to pay" claim against an insurer, pursuant to the terms of the statute. See SDCL § 58–12–3.1. Therefore, LodgeNet's Motion for Partial Summary Judgment, as relates to American's purported vexatious refusal to pay the claim, is premature and summary judgment on this issue will be denied.

LodgeNet is entitled to prejudgment interest because the damages in this case are readily determinable. See SDCL § 21–1–11; Honomichl v. Modlin, 477 N.W.2d 599, 602 (S.D.1991) (explaining that "[c]ourts should not hesitate to award prejudgment interest when the facts and circumstances make the amount of damages readily determinable."). Although LodgeNet requested prejudgment interest, it did not propose a calculation of interest to the Court. Therefore, the Court will order additional briefing on the issue of prejudgment interest before a judgment will be entered. Accordingly,

IT IS ORDERED:

1. That Plaintiff's Motion for Partial Summary Judgment, Doc. 12, is granted as to the breach of insurance

---

4. In its brief on the damages issue, Doc. 29, LodgeNet states that it incurred $156,133.76 for the reasonable and necessary legal expenses in defending the Jaros lawsuit. LodgeNet cites the Affidavit of Susan Brunick Simons at Exhibit A in support of this statement. Ms. Brunick Simons' Affidavit, however-

er, states that the total legal costs for defending the Jaros lawsuit were $159,322.77. This discrepancy is not explained in the record. Because the amount of $159,322.77 is set forth in Ms. Brunick Simons' Affidavit, and American has not contested that amount, the Court will award $159,322.77.

contract claim in Count One of the Complaint.

2. That Defendant's Motion for Summary Judgment, Doc. 32, is denied as to the breach of insurance contract claim in Count One of the Complaint, and is granted as to the bad faith claim in Count Two of the Complaint.

3. That Plaintiff's Motion for Partial Summary Judgment on Damage Issues, Doc. 28, is granted in part as to the damages for defense and indemnification for the Jaros lawsuit in the total amount of $604,169.01, plus prejudgment interest, which amount will be determined by the Court after submission of additional briefs, and is denied in all other respects.

4. That, on or before October 15, 2003, Plaintiff shall file a proposed calculation of prejudgment interest. Defendant shall file a Response to the Plaintiff's proposed calculation on or before October 29, 2003. Plaintiff may file a Reply to Defendant's Response on or before November 5, 2003.