Joseph A. TAMBURINE et ux., Appellants,

v.

CENTER SAVINGS ASSOCIATION et al., Appellees.

No. 1197.

Court of Civil Appeals of Texas, Tyler.

June 22, 1979.

Rehearing Denied July 19, 1979.

Robert M. Moore, Martin M. Hokanson, Moore & Laurence, Houston, for appellants.

John Eckel, Mills, Shirley, McMicken & Eckel, Galveston, for appellees.

MOORE, Justice.

Plaintiffs, Joseph A. Tamburine and wife, Edna Tamburine, instituted this declaratory judgment action against Center Savings Association (Center), Affiliated Capital Corporation, and Omega Development Corporation, seeking a judgment declaring that they were vested with equitable title to lots 9 through 18, section 13, Tiki Island, situated in Galveston County, Texas. As grounds for a cause of action, plaintiffs alleged that they were the equitable owners of the land by virtue of a contract entered into between them and their grantee at the time they sold the land in 1964. They alleged that their equitable title was superior to the title claimed by the defendants because at the time the defendants acquired title they each had actual or constructive notice of their equitable claim. They further alleged that the defendants were charged with notice of their claim because prior to the time the defendants acquired title, defendant, Center, employed Stewart Title Company as its agent for the purpose of investigating title and issuing a title policy; that in examining title Stewart was put on notice of plaintiffs' claim and as a result the notice or knowledge of the agent is imputed to Center and its successor in title. Defendants answered with a general denial, a plea of not guilty, and affirmatively alleged that they were bona fide purchasers without knowledge of the plaintiffs' claim. After a trial before the court, without a jury, the trial court rendered a take-nothing judgment against the plaintiffs from which they perfected this appeal.

We affirm.

Before discussing the points of error a brief summary of the facts giving rise to the controversy will be helpful. In September 1964, plaintiffs executed a warranty deed to the land in question to William W. Sherrill, Trustee for Jamaica Corporation which ultimately became Timewealth Corporation. As a part of the transaction the plaintiffs and Timewealth entered into a contract under the terms of which it was provided that if Timewealth completed a subdivision on any part of the land in question for residential purposes within 10 years, Timewealth would convey 10 residential lots to the plaintiffs. In 1968, the plaintiffs brought suit against Timewealth Corporation to determine their rights under the above mentioned contract and duly filed a Lis Pendens Notice. The suit was settled and dismissed in 1969 upon Timewealth's written agreement to convey the plaintiffs 10 residential lots. During the same month, the plaintiffs caused a broad form of Release of Lis Pendens to be filed in the Galveston County Deed Records. Neither the Memorandum of Agreement nor the judgment of dismissal was filed in the Deed Records so that on February 17, 1971, the only instruments appearing in the Deed Records of Galveston County showing that plaintiffs might have some interest in the land in controversy were the Lis Pendens Notice and the Release of Lis Pendens filed in connection with plaintiffs' suit against Timewealth. On February 17, 1971, Timewealth obtained a loan from Center and as security for the loan executed a Deed of Trust to Center covering the land without plaintiffs' knowledge or consent. Prior to the closing of the loan Stewart Title Guar-

anty Company[1] issued Center a Mortgagee's Title Insurance Policy. Sometime later when Timewealth became unable to meet the payments on the loan, defendant, Affiliated Capital Corporation, Center's trustee, foreclosed and conveyed the land to Center by a trustee's deed. On February 7, 1976, Center conveyed the land in question to defendant, Omega Development Corporation.

At the request of the plaintiffs, the trial court filed findings of fact and conclusions of law. The findings of fact material to this appeal, as numbered by the court, are as follows:

"11. Prior to making its loan to the Timewealth Corporation, Center Savings Association directed Stewart Title Company by form letter to provide it with a mortgagee's information letter and legal description for its preparation of the deed of trust between Timewealth Corporation and Affiliated Capital Corporation; and it also requested that Stewart Title Company see that Center obtain a mortgagee's title policy showing a good and valid first lien on the lots claimed by the Plaintiffs; in following the directions and from these requests of Center Savings Association, Stewart Title Company and Stewart Title Guaranty Company had access to, and should have examined the pleadings in Cause No. 106,169, and for that reason should have had actual notice of the Plaintiffs' equitable lien on the land which was then known to Stewart Title Company and Stewart Title Guaranty Company as Lots # 9 through # 18, Section 13, Tiki Island, Galveston County, Texas.

"12. Neither Stewart Title Company nor Stewart Title Guaranty Company were the agent of Center Savings Association or Affiliated Capital Corporation for the purpose of furnishing title information or examining title, but acted in their own interests for the purpose of issuing a title policy."

The court further found that at the time the deed of trust was executed by Timewealth, neither Center nor Affiliated Capital knew of the plaintiffs' claim and that the policy contained no exception to the claim of the plaintiffs.

Under the conclusions of law, the trial court concluded that: (3) the Defendants, Center and Affiliated Capital, did not have actual or constructive notice of the plaintiffs' equitable claim at the time the deed of trust was executed on February 17, 1971; (5) that both Stewart Title and Stewart Title Guaranty Company had actual notice of the plaintiffs' equitable claim to the lots in question prior to the time the deed of trust was executed by Timewealth Corporation; (6) that the actual notice of the plaintiffs' equitable claim to the ten (10) lots in controversy which Stewart Title Company had, was not imputed to the defendants, Center and Affiliated Capital, because Stewart Title Company at no time acted as the agent for Center; (12) Center, by and through its trustee, Affiliated Capital, was a bona fide purchaser for valuable consideration under the deed of trust of February 17, 1971; (13) that both Stewart Title Company and Stewart Title Guaranty Company acted in their own interests in preparing an examiner's report and issuing a mortgagee's information letter; and (14) that the plaintiffs should therefore not recover because, their claim being of an equitable nature was cut off by the rights of defendants, being those of a bona fide purchaser for valuable consideration.

Plaintiffs seek a reversal of the judgment through three points of error. In the second and third points, plaintiffs contend that the court erred in finding and concluding in finding of fact number 12 that Stewart Title Company was not acting as the agent of Center in furnishing title informa-

---

1. Stewart Title Guaranty is a title insurance company. It owns Stewart Title Company which operates an abstract plant and acts as the agent of the Guaranty Company in furnishing title information and selling title policies.

tion or examining title to the land in question, but was acting in its own interest in determining the insurability of title before issuing a title policy. Plaintiffs take the position that this finding is erroneous because an agency relationship was conclusively established as a matter of law, and alternatively, that such finding is against the greater weight and preponderance of the evidence. By the first point plaintiffs asserted that the court erred in its conclusions of law numbers 6 and 12 in finding that Stewart Title Company was not, as a matter of law, the agent of Center and therefore Stewart's notice of plaintiffs' equitable claim to the land could not be imputed to Center.

The proof relied on by the plaintiffs to establish the agency relationship consists, in part, of a form letter from Center to Stewart Title requesting that the title company issue a title policy on the land in question. The letter [2] relied on is quoted in the margin and will hereinafter be referred to as "plaintiffs' exhibit 22." Plaintiffs take the position that this letter requesting that Center be furnished with: (1) the legal description of the land; (2) a mortgagee's information letter showing any restrictions thereon; and (3) requesting Stewart perform various activities in closing the loan transaction, amounted to a request on the part of Center for Stewart to act as its agent. Plaintiffs say that this request when taken together with the proof showing that Stewart actually furnished the title information and various other services constitutes conclusive proof that a principal and agent relationship was created under the holding in *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286 (1951). We are not in accord with this proposition.

In *Woodward*, Hidalgo County employed a Mr. Tinkler, the owner of the Hidalgo County—Star County Abstract Company to furnish the county with title information necessary for the filing of tax suits. Mr. Tinkler in turn employed Hubert G. Ferguson, an attorney, to do the actual running of the index cards in the abstract office and securing the information to be furnished to the attorneys representing the county. The

2. "TO: STEWART TITLE COMPANY HOUSTON, TEXAS ATTENTION: Mr. Wagner GENTLEMEN: We have agreed to make a Construction Loan on the above case at the following terms and conditions: AMOUNTS $1,350,-000.00 INTEREST RATE 12% monthly as it accrues TERM: Payable on demand and if no demand is made then on or before 5 years Note purchase agreement from University Savings Association for 24 mo. 1 day from the date of note Trustee is to be Affiliated Capital Corporation, a Texas Corporation. A copy of these instructions is being sent to Billy B. Goldberg, Attorney, 539 Capital National Bank Bldg., Houston, Texas 77002. You are to furnish them with mortgagee's information letter, including full legal description, together with copy of restrictions. Also, send us copy of mortgagee's information letter and restrictions. Mr. Goldberg will draw the necessary papers and return same to you for execution at closing. All costs in connection with the loan, including Title Policy, Attorney Fees, Recording Fees, Survey, etc., are to be collected at time of closing, without cost to us. Cost of Construction Loan papers to be deducted from first draw. Please complete the closing of this loan and we will disburse to the builder according to the terms of the Construction Loan Agreement in our files, subject to your furnishing the following; 1. Original Note, showing total amount to be due 5 yrs from date of closing. 2. Certified copy of Deed of Trust. The recorded Deed of Trust is to be returned to us. 3. Copies of other instruments executed by interest parties, if any. 4. Mortgagee's Title Policy showing a first and valid lien to the Association with taxes paid up to 1971. Violation of restrictions, easements, etc. or other exceptions of unusual nature, such as encroachments, full mineral reservations, leases, etc., are to be brought to our attention before closing. Variations in legal descriptions and property addresses are to be cleared with us. 5. Loan Guaranty Agreement signed by Messrs: Welcome Wilson & Jack E. Wilson; Application signed: MAI Appraisal; current financial statements on Welcome Wilson, Jack E. Wilson and The Timewealth Corporation; Construction Cost Breakdown; Copy of Corporate Resolutions; Copy of minutes authorizing this loan with Center Savings Association; 6. Copy of Recorded Plat. 7. Letter from The Timewealth Corporation that there will be no secondary or subordinate liens placed on the property during the term of our loan. 8. Letter authorizing 60 day hold back of interest from final draw. 9. Loan Settlement and Payoff statement to be executed and returned to us."

court held that Tinkler and Ferguson were agents of the county because they were charged with the duty of furnishing the county with full information of all outstanding interests in the land referred to them for title investigation, and that Hidalgo County, as their principal, was charged with notice received by them in conducting a title examination even though the information gained by them was not in fact communicated to the county. The case is distinguishable in that the agency relationship created there was conclusively supported by the employment contract, whereas in the present case the question of whether the title company was employed for the purpose of making a title search and reporting its findings to Center is the issue in dispute. Further, the contract in that case was between Hidalgo County and an abstractor who engaged in the business of supplying title information, whereas in this case the contract was between an insurer and its insured.

There is a vast difference in a situation where a party employs an abstract company to make a title investigation and a situation where a party contracts a title insurance company for a title policy insuring title. The difference between abstract companies and title insurance companies is well defined. It has been said that:

"The former are concerned primarily with the compilation of data, affecting the title to particular tracts of land, to enable an examiner skilled in land law to evaluate the title; while the latter have evolved as corporate insurance companies to guarantee (with specified exceptions) the status of such title and to insure against existing defects which may beset it." *Texas Practice Guide,* Vol. 1, The State Bar of Texas, 1971, sec. 380 pp. 78–9.

■ Title insurance is a contract of indemnity. *Southern Title Guaranty Co., Inc. v. Prendergast,* 494 S.W.2d 154 (Tex. 1973). In the absence of some special circumstances, the relationship between the parties is limited to that of indemnitor and indemnitee.

The duties and obligations of a title insurance company are reflected in the Court of Civil Appeals opinion in *Stone v. Lawyers Title Insurance Corporation,* 537 S.W.2d 55 (Tex.Civ.App.—Corpus Christi 1976, reversed in part and cause remanded to the District Court and otherwise affirmed at 554 S.W.2d 183). The purchaser of a tract of land sued the title insurer, the title insurance agency, its president and the real estate agent to recover damages arising from gas pipeline easements which, although listed as exceptions in the title report, were not listed as exceptions in the owner's policy. The purchaser claimed that the agency and its president by failing to inform the purchaser of the contents of the title report were both negligent and fraudulent. The appellate court held that a title insurance company is not a title abstractor and owes no duty with regard to the examination of title, thus precluding any recovery for negligence. (The Supreme Court dealt with the additional issue of fraud, and did not speak to this issue.) The Corpus Christi court stated at pp. 64–5:

"In *Wolff v. Commercial Standard Ins. Co.,* 345 S.W.2d 565 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.), it was held that a title insurance company owes no duty to its insured to point out any outstanding encumbrances, and that the only duty a title insurance company has to its insured is to indemnify him against loss suffered by defects in title. In ruling on an almost identical point, it was held in *Prendergast v. Southern Title Guaranty Co.,* 454 S.W.2d 803 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.), that a title insurance company was not a title abstractor employed to examine title, and the title company assumed no duty to the insured with reference to an examination of title. No cause of action for negligence exists against a title company for failure to discover defects in title prior to the issuance of the title

policy. The very nature of the relationship between the parties precludes any recovery for negligence."

The court, in *Stone,* went on to state at p. 73:

"The title opinion which was written by the Agency's attorney to the Agency was personal to the Agency and was prepared for its exclusive use and benefit. It did not inure to the benefit of Stone, a complete stranger to that transaction."

It is the position of the plaintiffs that the present case is not controlled by the holding in *Stone* and the cases cited therein, because they say that in the present case Center Savings & Loan went further than merely requesting a policy of title insurance. They maintain that in the form letter referred to as Plaintiff's Exhibit 22, Center requested Stewart Title Company to search its records and determine if the title to the property was good and also requested the title company to perform various other acts. Thus, they contend that the title company became Center's agent and as a result the notice it acquired of plaintiffs' claim must be imputed to Center. For the reasons hereinafter explained we cannot agree with this contention.

The record reveals that after Center made the request for title insurance, a salaried employee of Stewart Title Company made a title investigation. Following the title investigation, a salaried attorney employed by Stewart Title Company issued a title opinion. Based on the information contained in the title opinion, Stewart Title Guaranty Company sent Center a mortgagee's information letter containing a legal description of the land and also showing the exceptions which the policy would contain. After Center's attorney had furnished the title company with all the necessary legal instruments to transfer the title and to meet the exceptions and requirements of the mortgagee's information letter, C. M. Wagner, a salaried employee of the title company, handled the closing of the title insurance contract. Before issuing the title

policy, Wagner supervised the execution of the various instruments required to accomplish the transfer of title or interest that the insurance company had agreed to insure in its mortgagee's information letter. None of the legal instruments were prepared by the insurance company or the title company. After determining that the title had been properly transferred and that the other requirements had been satisfied, the mortgagee's title policy was issued. In response to Center's request, Wagner also acted as escrow agent in closing the entire transaction and furnished Center with the nine instruments requested by it in the form letter described in Plaintiff's Exhibit 22.

■ An agent is one who is authorized by another to transact business or manage some affair for him, and to render to him an accounting of such transaction. It denotes a consensual relationship between two parties by virtue of which one of them is to act for and on behalf of the other, being subject to the other's control. 2 Tex.Jur.2d, Agency, Sec. 1, p. 437, citing cases.

Contrary to appellant's contention we do not believe the request made by Center in its form letter can be construed as authorizing the title company to make a search of its records to determine whether Timewealth had a good title, nor do we believe Center intended to request the title company to act as its agent in furnishing information with regard to the status of the title. In our view, the end product requested by Center was the issuance of a mortgagees's title policy. Even if Center intended to request title information, we find no evidence indicating that the title company accepted such duty and undertook to furnish information concerning the validity of the title.

■ As we understand the title insurance business, the company, before issuing a policy of title insurance, must necessarily take steps to inform itself of the status of the title to be insured. In the search for infor-

mation upon which must depend the decision to either issue or decline to commit itself to issue a policy, the insurance company obviously investigates the title for its own use and benefit to determine whether it will undertake the risk. The title information on which the company bases its decision relates to the condition of the title held by the grantor and is not made for the prospective grantee or lienholder to whom the policy will finally issue. In performing these activities, the company does not act in behalf of the party to be insured, but acts exclusively for itself. Therefore, up to the point where the insurance company commits itself to issue a policy upon certain conditions, the unilateral conduct of the insurance company or its agents in investigating the title does not create an agency relationship.

 Further, before closing the title policy contract, the company must satisfy itself that the title to the property is transferred in such a manner that the title or interest in the property is transferred in accordance with its commitment in the mortgagee's information letter. In performing this activity, it is necessary for the title company or its agents to supervise the transfer. In so doing, the company merely satisfies itself that the instruments tendered by the attorney are sufficient to accomplish the transfer of title. It does not undertake to act on behalf of the insured to see that a flawless title is transferred, but only that such title is transferred that the company will insure despite any flaws. Thus, the title company does not act as the agent of the insured in supervising the transfer, but acts exclusively for its own benefit and protection. In summary, it may be said that any and all activities performed by the insurance company or its agents, which are indispensable to the determination of insurability constitutes acts in its own behalf and not on behalf of the prospective grantee or lienholder to whom the policy will finally issue.

 Consequently, in the instant case, even though the company acquired notice of the plaintiffs' claim while making its own investigation of title, such notice was acquired by it, not as Center's agent, but while the insurance company was engaged in activities which were indispensable to its determination of insurability. Since notice of the plaintiffs' claim was not acquired by it while acting as Center's agent, it follows that such notice is not imputable to Center so as to defeat its status as a bona fide purchaser.

This brings us to the question of whether the notice of the plaintiffs' claim acquired by the title company prior to the time it undertook to act as Center's escrow agent in closing the loan, will be imputed to Center because of such agency relationship. We have concluded that it may not.

 An agent's notice of matters which is outside the scope of the agency or not related to its purposes is not imputed to the principal. 3 C.J.S. Agency § 436, p. 301. Before notice or knowledge of an agent is imputed to his principal it must first be shown that the authority of such agent extended to the very matter about which and concerning which such knowledge or notice was acquired. *Qualline v. Champion Paper & Fibre Co.,* 206 S.W.2d 267 (Tex.Civ. App.—Beaumont 1947, writ ref'd n.r.e.); 2 Tex.Jur.2d, Agency, sec. 189, p. 637.

 As escrow agent, the authority of the title company did not extend to the investigation of title. In this regard, the course and scope of the title company's authority was limited to the closing of the loan. Since the title company acquired no knowledge of the plaintiffs' claim while acting in the scope of its duties as escrow agent, no question arises with regard to imputed notice.

 In this connection, we have not overlooked the line of cases holding that under certain circumstances notice or knowledge of an agent acquired before the principal-agent relationship arose will be imputed to the principal. *Wellington Oil*

*Company of Delaware v. Maffi,* 136 Tex. 201, 150 S.W.2d 60 (1941); *Fireman's Fund Indem. Co. v. Boyle General Tire Co.,* 392 S.W.2d 352 (Tex.1965). This rule does not apply, however, where the prior notice or knowledge is acquired confidentially. *Fireman's Fund Indem. Co. v. Boyle General Tire Co.,* supra; Restatement of the Law of Agency, sec. 276. In our view all matters relating to the status of title amounted to a confidential matter between Stewart Title Guaranty Company and its agent, Stewart Title Company, who made the title investigation. The title opinion as well as other title information gathered by the title company was personal to it and the insurance company because it was for the insurance company's exclusive use and benefit. Had the title company turned the title information over to Center, it would have subjected itself to the penalties prescribed for the unauthorized practice of law. *Hexter Title & Abstract Co. v. Grievance Committee, Etc.,* 142 Tex. 506, 179 S.W.2d 946 (Tex. 1944). Thus, even though the title company had notice of enough facts so as to put it on notice of the plaintiffs' claim before becoming Center's escrow agent, such prior-acquired notice is not imputed to its principal, Center, because of its confidentiality.

After an examination of the record as a whole, we have concluded that the findings in which the court found that neither Stewart Title nor Stewart Title Guaranty Company acted as Center's agent are not subject to the complaint that the same are against the greater weight and preponderance of the evidence.

Accordingly, the judgment of the trial court is affirmed.