**Helen V. CAMPBELL, Appellant,**

v.

**F. Gordon HAMILTON, et al, Appellees.**

**No. 20786.**

Court of Appeals of Texas, Dallas.

Feb. 25, 1982.

Rehearing Denied March 29, 1982.

Schuyler B. Marshall, Thompson & Knight, Dallas, for appellant.

Jeffrey R. Hacker, Garland, for appellees.

Before TED Z. ROBERTSON, SPARLING and GUILLOT, JJ.

TED Z. ROBERTSON, Justice.

Appellant Campbell sued appellee Hamilton and alleged that appellee's agent, Duncan, committed fraud in the sale of an automobile to her. The trial court found, based upon the undisputed evidence, that

Duncan was not appellee's agent. We hold that as a matter of law Duncan was appellee's agent. Therefore, we reverse the judgment and render the judgment the trial court should have rendered.

On December 1, 1978, appellant responded to a newspaper ad which stated "'78 Grand Marquis, 2–DR, 1 owner, 8,000 mis., all options except moon roof, $7,500.00, must sell, 690–3471." Thereafter, she inspected the vehicle at Duncan's residence, believed that Duncan was the "1 owner" of the car, believed that the right door had been dented, but it was fixed and was now all right, and believed that she was purchasing basically a brand new car. On December 2, she agreed to purchase the vehicle from Duncan for $6,800.00, leaving him a $50.00 deposit, and on December 4, 1978, she wrote Duncan two additional checks for the balance of the $6,800.00 purchase price, plus transfer fees. Appellant believed that Duncan was the original owner of the automobile, she was not aware that it had been wrecked or sold as salvage, and she would not have purchased the car had she known its history or true ownership. Only several weeks later, as a result of receiving her title and discovering the transferror was Hamilton Auto Company, did Campbell learn that the vehicle was not indeed a one owner car, owned by Duncan.

It is undisputed that Hamilton Auto Company transferred title to appellant. Several weeks after the purchase, appellant discovered the vehicle had been wrecked, and thereafter obtained a set of title records from the State whereupon she learned that the vehicle had been totaled, sold as salvage, and then transferred through a series of dealers, including Hamilton Auto Company, to her. The title records demonstrate: the vehicle was originally sold as a new car by Leland Lincoln-Mercury to Robert R. Byrnes on February 10, 1978; a Texas salvage certificate of title was issued on July 3, 1978 to State Farm Insurance Company who transferred title on July 5, 1978 to Ed Lane Motors; Ed Lane Motors sold the car to Virgil Gunter Auto Sales on November 8, 1978; Virgil Gunter Auto Sales sold the car to Hamilton Auto Company on November 9, 1978; Hamilton Auto Company reassigned title to appellant on December 4, 1978. Appellant would not have purchased the vehicle had she known this ownership history instead of believing Duncan was the original owner of the automobile.

Although appellant was told she was purchasing basically a brand new car and she was not informed that the vehicle had been wrecked, a repair estimate demonstrated an estimated repair cost on June 6, 1978 of $8,530.28. There was testimony that the automobile was worth $3,000.00 less than appellant paid for it as of the date and place of purchase, considering its actual condition.

The undisputed evidence shows that pursuant to a verbal agreement between appellee and Duncan, appellee authorized Duncan to purchase automobiles with drafts drawn on Hamilton Auto Company. The purchase of the automobiles was financed with appellee's credit at a bank. Title to the automobiles purchased by Duncan was placed in appellee's name because it was appellee's credit that had financed the purchase of the vehicles. Appellee limited Duncan to purchasing three automobiles at any one time and required Duncan to dispose of each automobile purchased within thirty days. Appellee prohibited Duncan from giving any warranties on the vehicles he was selling and instructed him not to run back speedometers. If Duncan did not follow appellee's instructions, appellee could "pick up the cars" and "shut off his credit."

Since the evidence is undisputed, the question of whether Duncan was appellee's agent is a question of law for the court. *Minneapolis-Moline Company v. Purser*, 361 S.W.2d 239 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency Sec. 1 (1957). It is undisputed that appellee manifested his consent to Duncan

that Duncan should act on appellee's behalf with respect to appellee's credit and the title to the automobiles purchased and subject to appellee's control, and Duncan consented so to act. We hold, therefore, that as a matter of law Duncan was appellee's agent.

Since Duncan was acting as appellee's agent, appellee is liable for Duncan's fraud and misrepresentations within the scope of the agency even though appellee had no knowledge of the fraud or misrepresentations and even if appellee received no benefit from the fraud or misrepresentations. *Wink v. Wink*, 169 S.W.2d 721 (Tex.Civ. App.—Galveston 1943, no writ). Accordingly, we reverse the judgment and render judgment for appellant in the amount of $23,000 against appellee Hamilton.

Reversed and rendered.

SPARLING, J., dissents.

SPARLING, Justice, dissenting.

I dissent.

I cannot agree that the relationship between Hamilton, appellee, and Duncan was that of principal and agent, therefore under no theory of agency is a third party, appellant, entitled to recover from Hamilton for the tortious conduct of Duncan. I would accordingly affirm.

Agency denotes a consensual relationship existing between two persons, by virtue of which one of them is to act for and on behalf of the other, being subject to the other's control. *Tamburine v. Center Savings Association*, 583 S.W.2d 942 (Tex.Civ. App.—Tyler 1979, writ ref. n. r. e.); *Brown v. Cole*, 276 S.W.2d 369 (Tex.Civ.App.—Dallas 1955), aff'd 155 Tex. 624, 291 S.W.2d 704 (1956). The conduct of Duncan, for which majority holds Hamilton responsible, involves the circumstances of the *sale* of the car to appellant. In determining if an agency existed we must look more closely at the facts to determine: (a) if there was a consensual relationship between Hamilton and Duncan regarding the sale of the car; (b) if the car was being sold by Duncan for or on behalf of Hamilton; and (c) if Hamilton controlled Duncan in the sale of the car. I agree that Duncan made material misrepresentations in the sale of the car to appellant.

The evidence reflects that Hamilton, a car dealer, had a line of credit with a bank whereby he could finance his inventory of automobiles. Hamilton agreed, on many occasions, to allow Duncan to indirectly use his drafting privileges and floor plan with the bank. In doing so, Duncan would purchase a car by issuing a draft. Hamilton would pay the draft and the title would issue in the name of Hamilton, who, in turn, would pledge that title to the bank as collateral. In return for this credit arrangement, Hamilton charged Duncan a fee of $50.00 per car. The propriety of Hamilton's actions toward the bank is not in issue here.

Hamilton's name was not associated with Duncan's business. Hamilton did not advertise the car for sale, pay for the ad, have any knowledge of the contents of the ad, or direct Duncan in any manner relative to the advertisement. Hamilton and appellant never met, nor did they know of each other's existence until after the sale. The sale was consummated at the private residence of Duncan. There is no evidence that Hamilton knew, or should have known, any false claims made by Duncan to the appellant.

Hamilton's fee for extending credit was set by agreement. The fee was constant, regardless of whether a profit was made on the sale or not. There is no evidence of any money paid by Duncan to Hamilton other than the fee, therefore precluding any proprietary interest Hamilton may have had in Duncan's business. Duncan was not, and had never been employed by Hamilton. The *only* agreement existing between them simply set out the terms under which Duncan would use Hamilton's line of credit.

The credit agreement between Hamilton and Duncan was neither designed nor intended to create an agency, and should not be construed as doing so. Further, Duncan's transaction with appellant, and *all* other transactions with purchasers, were for Duncan's own account and for Duncan's profit; therefore Duncan was not acting for, or on behalf of Hamilton.

*Minneapolis-Moline Co. v. Purser*, 361 S.W.2d 239 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.), a case cited by majority, held that before a principal could be held liable for the acts of its agent under the theory of apparent authority or estoppel, it must first be pled, and then it must be proved that the third person "has been induced to act in good faith on *certain representations made by the principal*. Such (apparent) authority must be determined solely by the principal's acts, and not by those of the agent." *Minneapolis*, at 242. In the present case, estoppel was not pled, yet even if it were, neither appellant, nor appellee had ever heard of each other at the time of the transactions. It follows that appellant could have relied on any word or act of Hamilton.

In majority's only other cited case, *Wink v. Wink*, 169 S.W.2d 721 (Tex.Civ.App.—Galveston 1943, no writ), a principal was held liable to a third person for his agent's acts. The facts of *Wink* differ from this case because in *Wink* : (a) there was an undisputed agency relationship; (b) the agent was acting within the scope of his employment; and (c) the third party *knew* that the agent was acting on behalf of the principal. Once again, *Wink* cannot apply because even majority cannot find facts to indicate that appellant believed that Duncan was Hamilton's agent or that appellant even knew of Hamilton's existence. I cannot agree with majority's statement that Duncan was acting "on appellee's behalf with respect to appellee's credit." Hamilton's agreement with Duncan was mutually beneficial, but more important it concerned Duncan's *purchase* of the car, not his *sale* of the car. Again, the sale was the subject of the fraud.

The undisputed evidence is that Hamilton's name appeared on the car title, but only because the bank had extended credit to Hamilton, not Duncan, and the car title was not seen by appellant until after the agreement to purchase. The limitations placed on Duncan by Hamilton, discussed by majority, regarding the number of cars that Duncan could finance, the thirty-day period that Duncan could hold a car financed in this manner, and Hamilton's right to pick up the cars was consistent with Hamilton's protection of his own credit at the bank. It would appear, under majority's opinion, that any bank or lender in the business of providing credit, and, while doing so, protecting its collateral, would be strictly liable for the unforseen conduct of its borrower. Yet, a distinction is acknowledged between debtor-creditor and principal-agent relationships in *Davis and Hamm Commission Co. v. Mt. Vernon Bank*, 133 S.W. 448 (Tex.Civ.App.1911, no writ). *Davis* held that a livestock company's actions in financing, receiving, and shipping cattle for an individual established a lender-borrower, *not* a principal-agent, relationship with that individual. Therefore, the lender was not held responsible to third parties for the actions of its borrower.

I would hold that there is no evidence to support a finding of agency, so, as a matter of law Hamilton cannot be held to be responsible for Duncan's deception. I dissent to the majority's holding, and would accordingly affirm.