In The
Court of Appeals
For The
First District of Texas
___________

NO. 01-01-00111-CV




CARLOS GONZALES AND JANET R. JONES, Appellants

V.

AMERICAN TITLE COMPANY OF HOUSTON; WOODFOREST
BANCSHARES, INC.; AND RESOURCE BANCSHARES MORTGAGE GROUP,
Appellees

* * *
AMERICAN TITLE COMPANY OF HOUSTON, Appellant

V.

CARLOS GONZALES AND JANET R. JONES, Appellees




On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 1999-18211




O P I N I O N 
          Appellants, Carlos Gonzales and Janet R. Jones (the borrowers), filed suit
seeking an injunction to prevent foreclosure on their home and for damages against
Resource Bancshares Mortgage Group (RBMG), Woodforest Bancshares, Inc.
(Woodforest) and American Title Company of Houston (American Title). American
Title counterclaimed for attorneys’ fees and costs. The trial court granted summary
judgment motions in favor of RBMG, Woodforest and American Title on the
borrowers’ claims and granted the borrowers’ motion for summary judgment denying
American Title’s counterclaim. The borrowers claim the trial court erred in rendering
the summary judgments against them because of fact issues involved in all of their
claims. American Title claims the trial court erred in granting a summary judgment
for the borrowers because American Title was entitled to its attorneys’ fees and costs
as a matter of law. We affirm.
Facts 
          In May 1997, the borrowers sought a $200,000.00 loan to build a home on land
they owned. They approached Woodforest, explained their needs, and told
Woodforest they could not afford more than $1,500.00 per month in loan payments. 
An estimate of costs to obtain the loan totaled $9,950.00. Woodforest prepared an
application for a $209,950.00 loan with interest at 8.5 percent, and the borrowers
signed this application. Thereafter, a second application was made for the same loan
amount, but this second application indicated (1) the interest rate had increased to
9.75 percent and (2) private mortgage insurance (PMI) would be required. This
application was also signed and approved by the borrowers.
          An interim construction loan, including PMI costs, was made in June 1997. In
December 1997, when the borrowers’ home was completed, the construction loan was
converted into a total, permanent home loan of $209,750.00 with an interest rate of
7.375 percent.


 American Title conducted the loan closing and issued a title policy.
          In February 1998, the borrowers received notice that Woodforest had
transferred its interest in the borrowers’ note and deed of trust to RBMG. Thereafter,
the borrowers received notice that their monthly note payment would be $1,608.00,
$1448.69 of which was principal and interest.
          In January 1999, RBMG notified the borrowers that their reserve escrow
account was $6,323.16 below federal and state requirements. The notice gave the
borrowers the choice of paying the deficiency in a lump sum or increasing their
monthly payments to $2,541.42 for 12 months. The borrowers refused to pay the
increased amount and, when foreclosure was threatened, filed this action. The
borrowers sought an injunction to prevent foreclosure and damages.
Standard of Review 
          The standard of review in an appeal from a traditional summary judgment
requires a defendant who moved for a summary judgment on the plaintiff’s causes of
action to (1) show there is no genuine issue of material fact as to at least one element
of each of the plaintiff’s causes of action or (2) establish each element of the
defendant’s affirmative defense.


 Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). 
If there is no genuine issue of material fact, judgment should issue as a matter of law. 
Haase v. Glasner, 62 S.W.3d 795, 797 (Tex. 2001). All evidence favorable to the
nonmovant is taken as true, and we make all reasonable inferences in the
nonmovant’s favor. Id. In opposing a no-evidence motion for summary judgment, a
nonmovant must produce more than a scintilla of evidence that creates more than a
mere surmise or suspicion of a fact for each element of the nonmovant’s claim. See
Marsaglia v. Univ. of Texas, El Paso, 22 S.W.3d 1, 4 (Tex. App.—El Paso 1999, pet.
denied).
Claims Against RBMG
          The borrowers’ claims in the trial court against RBMG that are pertinent to this
appeal were for misrepresentation, fraud, fraud in the inducement, conspiracy,
violations of the Deceptive Trade Practices—Consumer Protection Act (DTPA), and
unauthorized charges for PMI.
          The borrowers contend the trial court erred in granting a no-evidence summary
judgment because their evidence raised fact issues. They state their claims were not
based on oral representations that would vary the terms of the written loan contract,
but on the written loan contract. Thus, they contend that the statute of frauds does not
bar their claims of fraud, fraud in the inducement, misrepresentations, or conspiracy
or their request for out-of-pocket damages. They also claim RBMG was not a holder
in due course and the release they signed was not valid.
          RBMG contends the borrowers’ claims of fraud, fraud in the inducement,
misrepresentations and conspiracy are all based on the borrowers’ oral conversations
with Woodforest concerning monthly note payments of $1,500.00. RBMG contends
the statute of frauds would bar the admission of such conversations into evidence. 
RBMG further contends it was not privy to such conversations, never made any
promises to the borrowers, and in fact had no contact with the borrowers until after
purchasing the borrowers’ note and deed of trust from Woodforest.
          The borrowers’ claims against RBMG, with the exception of the final increase
in the borrowers’ monthly note payment, are based on the actions of Woodforest and
American Title. The basic contention that underlies the borrowers’ claims is that
Woodforest was RBMG’s agent in making the loans, that American Title was
Woodforest’s fiduciary in handling the closing of the loan, and that RBMG is
therefore responsible for the actions of Woodforest and American Title.
A.      RBMG as Principal; Woodforest as Agent
          An agent is a person or entity who (1) is authorized to act for another and (2)
is subject to the control of the other. Jamison v. Nat’l Loan Investors, L.P., 4 S.W.3d
465, 468 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); Tamburine v. Ctr. Sav.
Ass’n, 583 S.W.2d 942, 948 (Tex. Civ. App.—Tyler 1979, writ ref’d n.r.e.).
          The borrowers claim Woodforest was the agent of RBMG because Woodforest
sent the borrowers’ applications to RBMG for approval, whereupon RBMG (1)
determined the rate of interest on the borrowers’ loan, (2) determined what the
borrowers’ monthly note payment would be, (3) determined whether PMI would be
required, and (4) controlled the actions of Woodforest throughout the entire loan
transaction.
          The summary judgment evidence shows that about a year before Woodforest
made the borrowers’ loan, Woodforest and RBMG entered into a “wholesale
mortgage agreement.” The agreement provided that Woodforest, as broker, could sell
home loans to RBMG, as buyer. Woodforest was not required to broker all its loans
to RBMG, and RBMG was not required to buy all loan contracts Woodforest
submitted to RBMG. The contract specifically negates an agency relationship
between Woodforest and RBMG.
          The procedure followed by Woodforest in making loans it intended to broker
was (1) to decide first to which buyer it wanted to sell the loan, (2) to take an
application from the borrower, and (3) to send the application to the potential buyer
of the loan. The potential buyer would, after doing its routine checking, advise
Woodforest of its interest in purchasing the loan and what interest rate and other
terms and conditions it would require. Woodforest used this procedure with the
borrowers’ loan.
          When Woodforest sent the borrowers’ application to RBMG, RBMG notified
Woodforest it was interested in purchasing the loan, but at the 9.75 interest rate and
not the 8.50 percent rate reflected in the application, and that it would also require
PMI in addition to a deed of trust as collateral. After receiving RBMG’s notice,
Woodforest requested that the borrowers make a new application to meet RBMG’s
requirements. The borrowers then signed a second application.
          The borrowers contend this interaction between Woodforest and RBMG
constituted an agency agreement, with RBMG as principal and Woodforest as agent. 
We disagree. The borrowers produced no summary judgment evidence that
Woodforest had to broker the borrowers’ loan to RBMG or that RBMG was
compelled to buy the loan. More specifically, the borrowers produced no summary
judgment evidence that RBMG authorized Woodforest to act for RBMG and no
summary judgment evidence that Woodforest was subject to the control of RBMG. 
Authorization to act and control of the action are the two essential elements of
agency. Tamburine, 583 S.W.2d at 948. Accordingly, the borrowers’ claims that
depend on an agency relationship between Woodforest and RBMG necessarily fail. 

          We hold that Woodforest was not the agent of RBMG in its transactions with
the borrowers and that RBMG was not responsible for the acts of Woodforest in its
transactions with the borrowers.
B.      Fraud and Fraud in the Inducement
          To raise a fact issue on their claims of fraud or fraud in the inducement of the
contract, the borrowers had to offer evidence that RBMG, or its agent, made a
material, false promise to the borrowers and failed to fulfill that promise, to the
borrowers’ detriment. See DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex.
1990). Fraud is statutorily defined as a false representation of a material fact, made
to a person for the purpose of inducing that person into a contract, on which
representation the person relies in entering into the contract. Tex. Bus. & Com.
Code Ann. § 27.01 (a)(1)(A)-(B) (Vernon 2002).
          It is uncontested that RBMG made no promises or false representations to the
borrowers to induce them to enter into the loan contract, and we have held that
Woodforest, which the borrowers’ allege made false representations to the borrowers,
was not an agent of RBMG. Accordingly, the borrowers produced no evidence that
RBMG perpetrated a fraud on the borrowers. 
          These same facts apply to the borrowers’ claim of fraud in the inducement
against RBMG. Although fraud in the inducement is a particular species of fraud, the
elements of fraud must still be established. Haase, 62 S.W.3d at 799. Because we
have held there was no fraud by RBMG, the borrowers’ claim of fraud in the
inducement by RBMG fails. 
          We overrule the borrowers’ fifth issue, in which they contend that RBMG’s
fraud precludes RBMG’s reliance on its affirmative defense of release.
          These same facts also defeat the borrowers’ claim that RBMG was a party to
a conspiracy to defraud the borrowers. Civil conspiracy is a derivative action
premised on an underlying tort. Tilton v. Marshall 925 S.W.2d 672, 681 (Tex. 1996). 
The borrowers’ failure to offer summary judgment evidence of any underlying tort
by RBMG causes their claim of conspiracy to fail. 
C.      Holder in Due Course
          The borrowers contend that they raised a fact issue regarding whether RBMG
was a holder in due course. In moving for summary judgment, RBMG asserted that
it was a holder in due course as a matter of law and, therefore, entitled to prevail
against all of the borrowers’ claims. The borrowers’ claim that RBMG was not a
holder in due course of the borrowers’ loan contract appears to be based on assertions
that Woodforest was the agent of RBMG and that RBMG had knowledge of
misrepresentations made by Woodforest to the borrowers.
          A “holder in due course” takes an instrument for value in good faith and
without notice, either that the instrument is overdue or has been dishonored or that
any person has a defense against or claim to the instrument. Tex. Bus. & Com. Code
Ann § 3.302 (a)(1),(2)(A)-(C) (Vernon 2002).
          As addressed above, Woodforest was not the agent of RBMG, and there is no
summary judgment evidence that RBMG was a party to the negotiations between
Woodforest and the borrowers. In addition, there is no summary judgment evidence
that RBMG had notice of any alleged misrepresentations Woodforest made to the
borrowers or that the borrowers had any claim or defense against the legality of the
note. We hold that RBMG conclusively established it was a holder in due course
when it purchased the borrowers’ note and was, therefore, entitled to summary
judgment on that basis.
          We overrule the borrowers’ third issue, which challenges whether RBMG
established its right to summary judgment as a holder in due course. Because RBMG
was entitled to prevail by summary judgment as a holder in due course, we need not
address the borrowers’ fourth issue, in which they challenge RBMG’s right to prevail
by summary judgment on its asserted affirmative defense of release. 
D.      DTPA
          We also find no merit to the borrowers’ contention that they raised triable
issues of fact on their claims against RBMG under the DTPA. We reach this
conclusion for several reasons. In order to recover under the DTPA, a person must
be a consumer. See Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon 2002);
Riverside Nat’l Bank v. Lewis, 603 S.W.2d 169, 173 (Tex. 1980); see also Tex. Bus.
& Com. Code Ann. § 17.45(4) (Vernon 2002) (defining “consumer” as “an
individual, partnership, corporation, this state, or a subdivision of this state, who
seeks or acquires by purchase or lease, any goods or services” and providing
exception for certain businesses). There was not a consumer relationship between the
borrowers and RBMG during the period when the borrowers’ complaints about the
various torts arose. In addition, RBMG did not commit any of the torts about which
the borrowers complain. Finally, RBMG was only a buyer of the borrowers’ note and
deed of trust and had no contact with the borrowers until it purchased those
instruments after the loan was consummated. See Riverside Nat’l Bank, 603 S.W.2d
at 173. 
E.      Unauthorized Private Mortgage Insurance
          The borrowers assert that they raised fact issues regarding whether they
authorized the charges of premium for PMI, from which the deficiency in their
escrow account resulted. 
          The summary judgment record does not support the borrowers’ claim that they
did not authorize premiums for PMI coverage. The borrowers’ second and third loan
applications, as well as the construction loan and permanent loan, provided for PMI
coverage. The borrowers signed each of these instruments. Although the borrowers
emphasize that borrower Jones stated, in her summary judgment affidavit, that no
person told the borrowers PMI was required, that statement did not raise a material
issue of fact as to RBMG because RBMG was not involved in the execution of the
contracts.
          The borrowers also claim, in their sixth issue, that they raised a fact issue
regarding whether RBMG was authorized to raise their monthly note payment.
          The “Taxes and Insurance” section of the loan contract provides as follows: 
Lender has the option but not the obligation, without demand or
notice and without waiver of any right whatever, to:
 
          a.       . . . [P]ay any delinquent tax or assessment [on the
property] . . . .
 
          b.       Advance any unpaid insurance premiums and
obtain and maintain any insurance policy required
by this Agreement.
 
Borrower hereby expressly agrees to pay to lender, upon
demand, any and all disbursements made under this Agreement
. . . and that all such disbursements shall become a part of the
indebtedness represented by the Note. 

          These terms unambiguously authorize RBMG to pay insurance premiums and
taxes and to raise the borrowers’ monthly note payments sufficiently to pay for such
expenses. Accordingly, we overrule the borrowers’ sixth issue.
          We hold the trial court did not err by rendering summary judgment in favor of
RBMG on no-evidence grounds. 
Claims Against Woodforest
          The borrowers’ claims against Woodforest are based on the premise that
Woodforest misrepresented to them that they could obtain a $200,000.00 home loan
with monthly payments that would not exceed $1,500.00. The borrowers contend the
trial court erred by rendering a traditional summary judgment in favor of Woodforest
because fact issues remain to be tried on all their claims. The borrowers further
contend the statute of frauds does not bar their claims of fraud, fraudulent
inducement, violations of the DTPA, conspiracy, and negligent misrepresentation,
despite their having executed an integration agreement. 
          The borrowers claim Woodforest misled them from the beginning to the end
of their negotiations. They point out that they had told a Woodforest representative
they could only afford a $1,500.00 monthly payment and had every assurance that
such a loan could made. They state that even though every application and loan
agreement in evidence shows that required monthly payments would exceed
$1,500.00, they were assured that the permanent monthly note payment would not
exceed $1,500.00. They further state that Woodforest did not tell them that PMI
would be required and that Woodforest had back-dated their second loan application. 
          Woodforest asserts that all the allegations of the borrowers are based on
alleged oral misrepresentations that would vary the terms of the written loan
contracts of the parties and that the statute of frauds bars consideration of such
alleged oral statements. Woodforest states there is nothing in any of the written
contracts that says anything about $1,500.00 monthly payments. Woodforest points
out that the principal and loan payment on the borrowers’ permanent loan are
$1,448.69 and state that no financial institution can guarantee what the cost of annual
taxes will be or what the premiums for insurance will be.
          We first note that most of the borrowers’ complaints are about Woodforest’s
actions that occurred prior to the execution of their construction loan, not the
permanent loan made the primary basis of this suit. We secondly note that the
increase in the borrowers’ monthly payments, from $1608.85 to $2521.42 or the lump
sum payment of $6323.16, was required by RBMG and not by Woodforest.
          We look to the agreements of the parties to see if the borrowers’ claims are
consistent with the terms of the agreements. The initial contract was entitled
“Residential Construction Loan Agreement.” In section 11n of the agreement, it
states:
This agreement represents the final agreement between the
parties and may not be contradicted by evidence of prior,
contemporaneous, or subsequent oral agreements of the parties.
 
          On the same day that the construction loan agreement was signed, June 20,
1997, a separate instrument entitled “Loan Agreement Notice” was presented to and
signed by the borrowers. That notice stated:
Subsection (b) of Section 26.02 of the Texas Business and
Commerce Code provides as follows: “A loan agreement in
which the amount involved in the agreement exceeds $50,000.
in value is not enforceable unless the agreement is in writing and
signed by the party to be bound or by that party’s authorized
representative.” You are hereby notified: the written loan
agreement to which this relates represents the final agreement
between the parties and may not be contradicted by evidence of
prior, contemporaneous, or subsequent oral agreements of the
parties. There are no unwritten oral agreements of the parties.
 
(Emphasis in original.)
          The borrowers also signed on June 20 a deed of trust for their property to
Woodforest. The deed of trust required property-hazard insurance and stated, “If
lender required mortgage insurance as a requirement of making the loan secured by
this security instrument, borrower shall pay the premiums required to maintain the
mortgage insurance in effect.”
          All of the above instruments were signed on June 20, and all the borrowers’
complaints against Woodforest, except the conspiracy claim and complaint of the
increased note payment required by RBMG, preceded the signing of those
instruments. There is no mention of monthly payments not to exceed $1,500.00 in
these instruments. 
          In December 1997, when construction on the borrowers’ home was completed,
the construction agreement terminated, and a new extension permanent loan
agreement was made. The summary judgment record does not show any evidence
that, at the time the new agreement was made, the borrowers were dissatisfied with
any actions of Woodforest or that the borrowers were claiming misrepresentation,
fraud, fraud in the inducement, deceptive trade practices, or conspiracy during the
term of the construction loan.
          We find no merit to or evidence to support the borrowers’ contention that the
contracts between the borrowers and Woodforest on their face substantiate their
claims of fraud, fraud in the inducement, and misrepresentations. There is nothing
in the contracts about a limit of $1,500.00 monthly payments. As to the borrowers’
complaint about PMI costs, the borrowers’ second and third loan applications as well
as the construction agreement and permanent loan agreement all provided for PMI
coverage and its costs. Furthermore these same applications and loan agreements all
show monthly payments in excess of $1,500.00. We can empathize with the
borrowers about the increase in the amount of their monthly note payments, but they
knowingly entered these written contracts. The borrowers are not illiterate persons: 
Jones was a legal secretary, and Gonzales was a policeman nearing retirement. It is
difficult to find merit to the borrowers’ claim when they received what they agreed
to in their applications. 
          The borrowers’ claim that Woodforest was a party to a conspiracy fails because
there is no summary judgment evidence to support such a claim. The basis for the
borrowers’ claim of conspiracy was that Woodforest was the agent of RBMG. We
have heretofore held that Woodforest was not the agent of RBMG. 
          The borrowers’ brief does not address any DTPA claims against Woodforest. 
Having failed to assert DTPA points or issues on their DTPA claims against
Woodforest, the borrowers have waived review of these claims. See Jacobs v.
Satterwhite, 65 S.W.3d 653, 655-56 (Tex. 2001).
          The borrowers allege that the statute of frauds does not bar their claim for out-
of-pocket damages. We agree. See Haase, 62 S.W.3d at 796, 800. However, the
borrowers did not offer any summary judgment evidence of any wrong that
Woodforest committed that would entitle them to recover out-of-pocket damages. 
We also have found no summary judgment evidence that the borrowers sustained out-of-pocket damages.
          We overrule the borrowers’ first and second issues.
          We hold the trial court did not err by rendering summary judgment in favor of
Woodforest.
Claims Against American Title
          The borrowers alleged in their pleadings that American Title failed in many
respects to perform its professional services in a good and workmanlike fashion,
breached its fiduciary duty by failing to make full disclosure of proper sums of money
paid out to correct the persons, and conspired with RBMG and Woodforest to commit
fraud against the borrowers.
          The trial court granted American Title’s traditional motion for summary
judgment. The borrowers assert they are entitled to reversal and remand because
there are material fact issues on all their claims.
          American Title asserts that the borrowers’ complaints against American Title
have nothing to do with the material issues in the case of misrepresentation of the
amount of monthly payments required on the borrowers’ loan or an unauthorized
increase in the amount due on the borrowers’ loan.
          In their brief, the borrowers allege that American Title breached its fiduciary
duties by not having a trained, licensed person to supervise and handle the closing of
their permanent loan. They claim the closing representative repeated or concealed the
misrepresentations made by Woodforest and RBMG by not giving the borrowers an
opportunity to review the closing documents. They allege that the closing
representative failed to identify interlineations and changes in the closing documents
and failed to disclose information pertaining to the disbursement of funds. They
further allege that closing papers were improperly prepared and that taxes shown
were not based on the latest information available. Lastly, they assert that the person
who notarized the closing papers was not present when the papers were signed. The
borrowers assert that these misdeeds were a breach of American Title’s fiduciary
duties to the borrowers and also contributed to a conspiracy by Woodforest and
RBMG to defraud the borrowers.
          The parties agree that American Title was a fiduciary and agree that a fiduciary
has a duty of loyalty, a duty to make full disclosure, and a duty to conserve money in
its possession and to pay it only to those entitled to it. They disagree on what further
duties a fiduciary has when it is a title company and escrow agent, as in this case. 
          Although, ordinarily, when a fiduciary relationship is established, the
fiduciary’s duties and obligations apply only to one party, a fiduciary who also has
an escrow relationship as a stakeholder acts as a neutral party to the transaction. Bell
v. Safeco Title Ins. Co., 830 S.W.2d 157, 161 (Tex. App.—Dallas 1992, writ denied);
Wilson v. Carver Fed. Sav. & Loan Ass’n, 774 S.W.2d 106, 107 (Tex.
App.—Beaumont 1989, no writ). In its escrow-agent capacity, the fiduciary not only
owes a fiduciary duty to all parties involved in a contract, but must also act with
utmost good faith and avoid self-dealing that places its interest in conflict with its
obligations to the beneficiaries. Trevino v. Brookhill Capitol Res., Inc. 782 S.W.2d
279, 281 (Tex. App.—Houston [1st Dist.] 1990, writ denied).
          It is uncontested that an American Title employee supervised execution of the
instruments that converted the construction loan to a permanent loan. It is also
uncontested that American Title properly recorded all the loan instruments and issued
the title insurance policies requested.
          Having reviewed the alleged actions of American Title, we agree with the
borrowers that the manner in which American Title handled their closing was, in
many respects, less than professional and left much to be desired. We disagree,
however, that American Title’s alleged actions raised triable issues of fact on the
borrowers’ claims that American Title breached a fiduciary duty, failed to perform in
a good and workmanlike manner, committed a fraud, or engaged in a conspiracy. As
addressed above, conspiracy is a derivative action based on an underlying tort. 
Tilton, 925 S.W.2d at 681. Fraud is the underlying tort on which the borrowers base
their conspiracy claim. Nothing in the summary judgment record supports the
borrowers’ claim that American Title was a party to a plan to defraud them. 
          We hold that the actions of American Title about which the borrowers
complain, even if these actions were less than professional, have nothing to do with
the material issues in this case and did not cause the borrowers damage. 
          We hold the trial court did not err by rendering summary judgment in favor of
American Title. 
          Based on the foregoing holdings, we overrule the borrowers’ seventh issue, in
which they globally assert that their summary judgment proof “pointed out disputed
facts on each of the appellees’ enumerated grounds” for seeking “no evidence”
summary judgment. 
American Title’s Counterclaim for Attorneys’ Fees and Costs 
          American Title also appeals, challenging the trial court’s denial of its
traditional motion for summary judgment seeking attorneys’ fees and costs under the
DTPA and the court’s rendering summary judgment in favor of the borrowers on that
counterclaim. See Williams v. Lara, 52 S.W.3d 171, 175 (Tex. 2001) (addressing
issues raised by cross-motions for summary judgment). American Title contends it
conclusively established its right to attorneys’ fees and costs under the DTPA as a
matter of law because the borrowers’ lawsuit was groundless and brought in bad faith
and because the borrowers did not defeat American Title’s right to attorneys’ fees or
costs. 
          American Title relies on section 17.50(d) of the DTPA, which mandates 
recovery of “reasonable and necessary attorneys’ fees and costs” to a defendant for
an action that “was groundless in fact or law or brought in bad faith, or brought for
purposes of harassment.” See Tex. Bus. & Com. Code Ann. § 17.50(c) (Vernon
2002). This section imposes a prerequisite, however, of a “finding by the court” of
one of the three stated grounds for recovery of reasonable and necessary attorneys’
fees and costs: groundlessness in fact or law, made in bad faith, or for purposes of
harassment. See id. 
          As movant for summary judgment, American Title had the burden to obtain the
prerequisite finding by the court that one of these bases applied. American Title
failed in its proof. Accordingly, we find no error in the trial court’s failure to render
summary judgment in favor of American Title on its counterclaim for attorneys’ fees. 
Conclusion
          The borrowers have not raised material fact issues on their claims against
RBMG, Woodforest, and American Title, and American Title did not prove its
counterclaim for attorneys’ fees and costs as a matter of law. 
          We hold that the trial court did not err in rendering summary judgment for
RBMG, Woodforest, and American Title on all claims made by the borrowers.
          We further hold that the trial court did not err in denying American Title’s 
motion for summary judgment on its claim for attorneys’ fees and in rendering
summary judgment in favor of the borrowers on that ground. 
          The judgment of the trial court is affirmed. 
 
 





     Jackson B. Smith, Jr.
     Justice
 
Panel consists of Chief Justice Radack and Justice Smith.


 Former Chief Justice
Michael H. Schneider, who retired from the Court before the issuance of this opinion,
did not participate in this decision.