IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 22, 2008

Charles R. Fulbruge III
Clerk

No. 06-41723

VIRGINIA SURETY COMPANY INC

Plaintiff-Appellee

v.

GEORGE ROYLE WRIGHT, doing business as Wright & Associates GMAC
Real Estate

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:05-CV-101

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

For this Texas diversity action, George Royle Wright contests the summary judgment awarded Virginia Surety Company, declaring it had no duty to defend or indemnify Wright in the Texas state-court action filed against him. The district court held the policy's conditions to coverage were not satisfied because Wright could not establish notice of the state-court action was first received subsequent to the policy's inception date. Primarily at issue is whether,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

under Texas agency law, notice of the state-court action received and signed for by Wright's employee prior to that inception date is imputed to Wright. AFFIRMED.

I.

In 2000, Laredo Independent School District (LISD) and Wright entered into a "real estate broker/client relationship", by which Wright agreed to assist LISD in negotiating for, and acquiring, real property. Unsatisfied with the price paid for that property, LISD filed the state-court action against Wright on 10 June 2004, asserting, inter alia, he made fraudulent representations regarding the value and condition of the property, causing LISD to pay more than market value. On 25 June 2004, Wright submitted notice of the action to his professional liability insurance carrier, Virginia Surety, for coverage consideration. (The policy's inception date is 7 March 2004.) The company agreed to provide a defense but reserved its right to withdraw.

After assuming Wright's defense, Virginia Surety learned of a demand letter sent to Wright by LISD's counsel on 27 October 2003 by certified mail, return receipt requested. The demand letter, mailed to Wright's office, gave pre-suit notice of LISD's complaint, as required by the Texas Deceptive Trade Practices Act. Receipt was acknowledged on 28 October 2003 by one of Wright's employees, Nora Manzo, who signed the receipt. Manzo was primarily a property manager but testified she received mail on occasion. Wright concedes Manzo signed the return receipt bearing the words "demand letter" but maintains he never personally received, or was made aware of, that letter until Virginia Surety notified him about it.

LISD's demand letter was received by Manzo prior to the policy's 7 March 2004 inception date. The policy covered wrongful acts only if all four of the following conditions were satisfied:

1. the wrongful act took place on or after the Retroactive Date;
2. prior to the inception date of th[e] policy period no Insured had knowledge of such wrongful act and had no basis to reasonably anticipate a claim that would be covered by this policy. . . .;
3. the claim arising out of the wrongful act is first made against any insured during the policy period; and
4. the claim is reported in writing to [Virginia Surety] no later than 60 days after the end of the policy period or, if applicable, during an extended claims reported period . . . .

(Emphasis added.)  The third condition to coverage is primarily at issue here.

In August 2004, after becoming aware of the LISD demand letter, Virginia Surety denied coverage and withdrew from Wright's defense.  Virginia Surety filed this declaratory-judgment action in May 2005, seeking judgment that, for the LISD litigation, there is no coverage, including no duty to defend or indemnify, under the policy. Wright counter-claimed for, inter alia, a declaration that Virginia Surety owes a defense and indemnity for that litigation.

Cross-motions for summary judgment were filed; and, on 9 November 2006, the district court granted judgment for Virginia Surety, denying Wright's cross-motion.  The district court focused on the third condition for coverage, holding:  no genuine issue of material fact exists on whether Wright could establish the claim arising out of the wrongful act was first made against him during the policy period.  The court, applying Texas agency law, found Manzo was Wright's agent and, therefore, imputed to Wright her pre-inception-date receipt of the demand letter.

II.

As noted, Wright must satisfy all four conditions to coverage under the policy. In other words, Virginia Surety prevails if it establishes Wright cannot satisfy any single condition. The district court held no coverage was required because Wright could not satisfy condition three and addressed no other conditions. Therefore, our analysis begins with whether Wright was first made aware of LISD's claim prior to the policy's 7 March 2004 inception date. For this diversity action, Texas law, of course, applies. Specifically, at issue is whether, under Texas agency law, Manzo's pre-inception-date receipt of the demand letter may be imputed to Wright.

A summary judgment is reviewed de novo, applying the same standards as did the district court. E.g., Nat'l Union Fire Ins. Co. v. Willis, 296 F.3d 336, 339 (5th Cir. 2002). Such judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A.

Wright maintains our analysis is narrowed by language in the policy and, therefore, a "limited" agency analysis is applied to whether he received notice of the 27 October 2003 demand letter. In applying agency law, however, the policy terms are not supplemented; general agency principles are applied to the policy. As recognized by the district court, contract law may be supplemented by agency law. See, e.g., Mississippi v. Richardson, 817 F.2d 1203, 1207 (5th Cir. 1987) (applying Mississippi agency law); RESTATEMENT (SECOND) OF CONTRACTS § 52 (1981) ("The rules stated in the Restatement . . . are supplemented by the law of agency, and in the absence of [a] contrary statement it is assumed that any necessary act may be performed on behalf of a contracting party by his agent.").

B.

It goes without saying that, "[u]nder general principles of agency law, notice to an agent is deemed notice to the principal if the agent's acts were within his authority". Norwood v. Litwin Eng'rs & Constructors, Inc., 962 S.W.2d 220, 225 (Tex. App. 1998) (citing Polland & Cook v. Lehmann, 832 S.W.2d 729, 738 (Tex. App. 1992)); see also Grissom v. Watson, 704 S.W.2d 325, 327 (Tex. 1986). When, as here, there is no genuine issue of material fact, whether an agency relationship exists is a question of law. Campbell v. Hamilton, 632 S.W.2d 633, 635 (Tex. App. 1982). The general rule in Texas regarding the creation of an agency relationship follows:

> "As between parties to the relation, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression in either words or conduct between them."

Elite Towing, Inc. v. LSI Fin. Group, 985 S.W.2d 635, 643 (Tex. App. 1999) (quoting Grissom, 704 S.W.2d at 326). "An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties." Id. (citations omitted).

At issue in Elite Towing was whether the appellant received proper notice of a trial setting. Id. at 642-44. The court found the notice was correctly addressed to appellant's attorney and sent by certified mail, return receipt requested. Id. at 638. The certified notice was received and signed for by another attorney, who was with another firm in the building. Id. The court recognized the other attorney had on occasion signed for mail on behalf of

5

appellant's attorney, and held a principal-agent relationship existed. Id. at 644. Notice of the trial was imputed, therefore, to appellant's attorney. Id.

The facts at hand are even more compelling for there being an agency relationship than those in Elite Towing. On 27 October 2003, LISD mailed a certified letter, return receipt requested, to Wright, notifying him of its intent to sue. The following day, the return receipt was signed by Manzo, an employee in Wright's office since 1996. Wright maintains a genuine issue of material fact exists on whether Manzo was his agent for purposes of receiving mail. Manzo, however, was a long-time employee of Wright and had accepted mail for Wright on prior occasions. In fact, Wright admitted he personally received the mail only on Saturdays; on other days it was delivered to someone else in his office. Along this line, Wright's office procedure did not prohibit Manzo, or any other employee, from receiving the mail.

Therefore, no genuine issue of material fact exists on whether Wright "intend[ed] that [Manzo] act for him, [and Manzo] . . . intend[ed] to accept the authority and act on it". Id. at 642-43. Accordingly, an agency relationship existed, and notice of the demand letter to Manzo is imputed to Wright. See Norwood, 962 S.W.2d at 225.

### C.

For the first time at oral argument, Wright asserted this court should distinguish between being an agent for purposes of receiving mail and being an agent for purposes of signing for it. It is well settled that this court generally "do[es] not consider assertions made for the first time at oral argument". United States v. Bigelow, 462 F.3d 378, 383 (5th Cir. 2006); see also United States v. Ogle, 328 F.3d 182, 191 n.9 (5th Cir. 2003). We decline to reach this new issue.

### III.

For the foregoing reasons, summary judgment was proper.

AFFIRMED.